John L. **LIPPERT,** Appellant,

v.

The **STATE** of Texas, Appellee.

No. 023–83.

Court of Criminal Appeals of Texas, En Banc.

Feb. 1, 1984.

Michael M. Fricke, Port Lavaca, for appellant.

Dan W. Heard, Dist. Atty. and Mark R. Kelly, Asst. Dist. Atty., Port Lavaca, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

Appellant was convicted of the possession of a controlled substance, to-wit: methamphetamine, with intent to deliver. After the jury's verdict of guilty, the court assessed punishment at 10 years' imprisonment, probated.

On appeal appellant contended the trial court erred in overruling his motion to suppress evidence obtained in an unlawful search and seizure of his person in violation of the Fourth and Fourteenth Amendments. See also Article I, § 9, Tex. Const. Appellant argued that the search was unconstitutional because it was done without a warrant, without probable cause, without consent, and was not incident to a valid arrest. Appellant contends the search occurred after he entered premises where a search warrant was being executed.

Distinguishing *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), and extending *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), to include a non-occupant under the circumstances, the Corpus Christi Court of Appeals upheld the validity of the search and seizure of the controlled substance and affirmed the conviction. *Lippert v. State,* 653 S.W.2d 460 (Tex.App.—13th Dist.—1982).

We granted appellant's petition for discretionary review to consider the correctness of such holding.

On March 25, 1981, Sgt. Melvin Blake of the Port Lavaca Police Department obtained a combination search and arrest warrant from a justice of the peace. The warrant authorized the search of a residence on North Virginia Street in Port Lavaca. The warrant also authorized the arrest and search of "each suspected party named in said affidavit." The affidavit for warrant, sworn to by Blake, after describing the place to be searched, reads: "Said suspected place is in charge of and controlled by each of the following named parties (hereinafter called 'suspected party,' whether one or more), to-wit: Sherry Fourtner, and Mike (last name unknown—but sound is phonetically similar to 'Euling'), and person or persons whose names, identities and descriptions are unknown to affiant."[1]

On March 27, 1981, Blake and Calhoun County deputy sheriffs Mike Gibson and

---

1. The affidavit provided, inter alia,

"4. Affiant has probable cause for said belief by reason of the following facts, to-wit: Affiant is Melvin Blake who is employed by the Port Lavaca Police Department as a police officer. Affiant was advised by a confidential informant that the said Sherry Fourtner and Mike (last name unknown) have a quantity of crystal (methamphetamine) concealed at the residence described above. Informant advised that he observed Mike (last name unknown) selling methamphetamine at the residence described above several days ago. Informant had observed Mike (last name unknown) selling methamphetamine at the residence described above on several occasions and informant had himself purchased methamphetamine at such residence. Infor-

mant knows the residence to be the residence of the said Sherry Fourtner and Mike (last name unknown). Informant has today, March 25, 1981, advised affiant that he was at the residence and Mike (last name unknown) advised informant that methamphetamine was to be delivered to the residence tonight at 11:00 P.M.

"Affiant believes that said informant is credible and his information is reliable because informant has previously provided this officer with reliable information concerning another criminal investigation. Additionally, this officer has recently maintained a visual surveillance of the said residence and observed vehicles belonging to persons known to be users of methamphetamine parked at the residence."

Milt Smith went to a residence on North Virginia to execute the warrant. It was after 8:30 p.m. and dark. Receiving no response to their knocks at the back door, the officers forced entry into the kitchen. The room was dark. Without lights they proceeded into the dining room, the living room and down the hall to the front bedroom. Forcing the door, the officers found Sheri Fourtner,[2] Michael Ulen and Bobby Myers. Deputy Gibson revealed that narcotics and narcotic paraphernalia were in open view. The two men were handcuffed and removed to the living room and the lights in the house were turned on. Fourtner was detained briefly in the bedroom[3] because she was identified as being in charge of the residence. She was later moved to the living room.

Sgt. Blake, who was not in uniform at the time of the search, testified that about 15 minutes after the officers commenced the execution of the warrant he was in the dining room when he turned and saw the appellant and Kathy Wise standing in the doorway between the kitchen and dining room. He did not know whether appellant and Wise had just come into the house or had been hiding therein.[4] Blake had seen appellant and his car at the residence on "several" occasions during his surveillance of the place. Appellant asked "What's going on?" Blake told appellant a drug raid was on and to assume the position—to place his hands on the wall. Appellant, wearing a brown jacket, was frisked. The frisk was fruitless. Blake found no weapons or narcotics. He expressly stated he was looking only for weapons.[5] Blake stated he did not arrest appellant, but detained him, told him he could not leave. Appellant and Wise were ordered to the living room to sit on the floor with the others who had been arrested. They were not handcuffed.

Wise, who was not frisked or searched, stated she had arrived in her car just behind appellant. She had come to the house to do her washing. They entered the house together, and were immediately confronted by Blake. Appellant was frisked, and she recalled that appellant then asked to leave and Blake refused.

Deputy Mike Gibson recounted details of the search. He related appellant and Wise were not in the house when the search commenced, but stated he did not see appellant enter the house. During his prior surveillance of the residence, he did not see appellant or his peach colored car.

Deputy Milt Smith testified that appellant arrived at the residence 15 to 30 minutes after the search began.

None of the officers executing the search saw appellant's car at the time of their arrival to execute the search warrant.[6]

Deputy Vivian Richards was summoned to transport the prisoners to the police station. He arrived at the residence and found appellant in the living room. Richards had no knowledge of what had previously transpired. As a matter of routine procedure before placing a person in a squad car, and at officer Smith's instruction, Richards searched appellant for weapons in the living room "for my safety." In appellant's right front shirt pocket Richards found a hard red plastic or vinyl case, six or seven inches

2. The name is also spelled Fortner in the record.

3. All of the methamphetamine and paraphernalia except that found on appellant was found in the bedroom.

4. Blake's police offense report stated: "While this officer was in the kitchen area of the residence checking with and assigning officers to tasks, a male and female walked in the back door of the residence and was heading for the living room area." Despite the fact the report was made at 4:30 a.m. following the raid, Blake insisted in his testimony appellant could have been hiding in a closet, and he didn't know whether he was in or out of the house when the officers arrived.

5. Blake stated he suspected appellant was involved in narcotics, but gave no reason for such belief except, perhaps, he had seen appellant's car at the residence on several occasions. When asked if his suspicion caused him to search appellant, Blake denied that but stated the search was for possible weapons only.

6. The car was observed in the driveway after appellant had been taken to jail.

long. Richards opened the case and found two plastic bags with white powder and one brown glass vial with a gold chain and spoon attached containing a white substance. The chain of custody was established and the white powder or substance was shown by the chemist to be methamphetamine. It was this controlled substance that appellant claims was the fruit of the illegal second search.

Appellant initially argues that he did not specifically come within the provisions of the combination search and arrest warrant.[7] The warrant authorized the arrest of those persons named in the affidavit. The appellant was not named in the affidavit.

The State argues that a warrant need not contain the name of the offender whose name is unknown, if the warrant authorizes the arrest of unnamed persons for whom probable cause exists to believe are in possession of narcotic drugs. The State relies upon *Dawson v. State,* 477 S.W.2d 277 (Tex. Cr.App.1972), and *Walthall v. State,* 594 S.W.2d 74 (Tex.Cr.App.1980).

In *Dawson* this court wrote:

"Hence, a search warrant properly issued on the basis of probable cause for the search of certain premises for narcotic drugs, named or unnamed, *for whom probable cause exists to believe are in possession of the narcotic drugs ....*" (Emphasis supplied.) See also *Pecina v. State,* 516 S.W.2d 401 (Tex.Cr.App.1974).

In *Walthall* this court stated:

"Appellant's final contention regarding the validity of the warrant is that the warrant fails to describe the persons to be arrested in sufficient detail. The warrant orders the arrest of 'the person or persons commercially exhibiting the said motion picture film or possessing the same with the intent to distribute.' *It is not necessary to include the name of the offender in the search warrant. If his name is unknown, it is sufficient to describe him, and if his identity is also*

unknown, it is sufficient to aver that the premises are in control of 'parties unknown to the affiants.' See 51 Tex. Jur.2d, Searches and Seizures, Sec. 23, pp. 664–665; *Rice v. State,* 548 S.W.2d 725 (Tex.Cr.App.1977); *Hernandez v. State,* 437 S.W.2d 831 (Tex.Cr.App.1968). *The warrant in this case sufficiently describes the offender, and the description is limited to those persons in control of the film in question.* Appellant's contention is without merit. (Emphasis supplied.)

■ The combination search and arrest warrant and the supporting affidavit in the instant case do not contain any reference to appellant or any information which would constitute probable cause that he possessed methamphetamine or other controlled substance. Further, from the record it appears appellant was not one of those persons who was "in charge of and controlled" the described premises whose "names, identities and description are unknown to affiant" as set out in the affidavit. The warrant authorized the officers, inter alia, "... also to arrest and bring before me each suspected party *named* in said affidavit." There was no provision to bring before the magistrate all persons found on said premises or making escape therefrom.[8] We agree with the Court of Appeals that the warrant did not specifically authorize appellant's arrest.

Nevertheless, the State relies upon various Texas cases which hold that an officer executing a valid search warrant has the right and duty to search persons found on the premises during the execution of the warrant. *Hernandez v. State,* 437 S.W.2d 831 (Tex.Cr.App.1968); *Johnson v. State,* 440 S.W.2d 308 (Tex.Cr.App.1969); *Guzman v. State,* 461 S.W.2d 602 (Tex.Cr.App.1970); *Guerra v. State,* 496 S.W.2d 92 (Tex.Cr.App. 1973); *Brown v. State,* 498 S.W.2d 343 (Tex. Cr.App.1973); *Martinez v. State,* 504 S.W.2d 897 (Tex.Cr.App.1974). And the cases have made clear that there can be no

---

**7.** *Pecina v. State,* 516 S.W.2d 401 (Tex.Cr.App. 1974), upheld the validity of a combination search and arrest warrant.

**8.** The printed form of warrant did have such provision, but it was expressly limited to situations where the "suspected place is a gaming house."

meaningful distinction between persons found on the premises by officers when they initiate their search and persons who enter the premises after the search commences. *Johnson v. State,* supra; *Martinez v. State,* supra; *Fisher v. State,* 493 S.W.2d 841 (Tex.Cr.App.1973); *Rice v. State,* 548 S.W.2d 725 (Tex.Cr.App.1977).

The continued validity of these cases has been cast in doubt by *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). See also *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). In *Rodriquez v. State,* 614 S.W.2d 448 (Tex.Cr. App.1981), this court indicated *Hernandez* and *Johnson* were "no longer the law" in light of *Ybarra.* See also *Christian v. State,* 592 S.W.2d 625 (Tex.Cr.App.1980).

In *Ybarra* a search warrant was issued which authorized the search of a tavern and the bartender known as "Greg," who was suspected of selling heroin. Entering the tavern, the officers announced their purpose and advised they were going to conduct a cursory search for weapons. The patrons were searched.[9] The officer who searched Ybarra, a customer, felt a cigarette pack with objects in it in Ybarra's pants pocket. He did not remove the same. After patting down other customers, the officer again frisked Ybarra and found heroin in the cigarette pack.

In reversing the judgment of conviction, the Supreme Court wrote:

"It is true that the police possessed a warrant based on probable cause to search the tavern in which Ybarra happened to be at the time the warrant was executed. But, *a person's mere propenquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. Sibron v. New York,* 392 U.S. 40, 62–63, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917. Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particular-

ized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be. *The Fourth and Fourteenth Amendments protect the 'legitimate expectations of privacy' of persons, not places.* See *Rakas v. Illinois,* 439 U.S. 128, 138– 143, 148–149, 99 S.Ct. 421, 427–430, 433, 58 L.Ed.2d 387; *Katz v. United States,* 389 U.S. 347, 351–352, 88 S.Ct. 507, 511, 19 L.Ed.2d 576.

" * * *

"... *[A]lthough the search warrant, issued upon probable cause, gave the officers authority to search the premises and to search 'Greg,' it gave them no authority whatever to invade the constitutional protections possessed individually by the tavern's customers.*

"Notwithstanding the absence of probable cause to search Ybarra, the State argues that the action of the police in searching him and seizing what was found in his pocket was nonetheless constitutionally permissible. We are asked to find that the first patdown search of Ybarra constituted a reasonable frisk for weapons under the doctrine of *Terry v. Ohio,* 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889]. If this finding is made, it is then possible to conclude, the State argues, that the second search of Ybarra was constitutionally justified. The argument is that the patdown yielded probable cause to believe that Ybarra was carrying narcotics, and that this probable cause constitutionally supported the second search, no warrant being required in light of the exigencies of the situation coupled with the ease with which Ybarra could have disposed of the illegal substance.

"We are unable to take even the first step required by this argument. *The initial frisk of Ybarra was simply not supported by a reasonable belief that he was*

---

9. An Illinois statute authorized law enforcement officers to detain and search any person found on premises being searched to a search warrant, to protect themselves from attack or to prevent the disposal or concealment of anything described in the warrant. Texas has no similar statute.

armed and presently dangerous, a belief which this Court has invariably held must form the predicate to a patdown of a person for weapons. *Adams v. Williams,* 407 U.S. 143, 146 [92 S.Ct. 1921, 1923, 32 L.Ed.2d 612]; *Terry v. Ohio, supra,* [392 U.S.] at 21–24, 27 [88 S.Ct. at 1879–81, 1883]. When the police entered the Aurora Tap Tavern on March 1, 1976, the lighting was sufficient for them to observe the customers. Upon seeing Ybarra, they neither recognized him as a person with a criminal history nor had any particular reason to believe that he might be inclined to assault them. Moreover, as Police Agent Johnson later testified, Ybarra, whose hands were empty, gave no indication of possessing a weapon, made no gestures or other actions indicative of an intent to commit an assault, and acted generally in a manner that was not threatening. At the suppression hearing, the most Agent Johnson could point to was that Ybarra was wearing a ¾-length lumber jacket, clothing which the State admits could be expected on almost any tavern patron in Illinois in early March. In short, the State is unable to articulate any specific fact that would have justified a police officer at the scene in even suspecting that Ybarra was armed and dangerous.

"The *Terry* case created an exception to the requirement of probable cause, an exception whose 'narrow scope' this Court 'has been careful to maintain.' Under that doctrine a law enforcement officer, for his own protection and safety, may conduct a patdown to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted. See, e.g., *Adams v. Williams, supra* (at night, in high-crime district, lone police officer approached person believed by officer to possess gun and narcotics). Nothing in *Terry* can be understood to allow a generalized 'cursory search for weapons' or, indeed, any search whatever for anything but weapons. *The 'narrow scope' of the Terry exception does not permit a frisk for weapons on less than reasonable belief or suspicion*

*directed at the person to be frisked, even though that person happens to be on premises* where an authorized narcotics search is taking place.

"What has been said largely disposes of the State's second and alternative argument in this case. Emphasizing the important governmental interest 'in effectively controlling traffic in dangerous, hard drugs' and the ease with which the evidence of narcotics possession may be concealed or moved around from person to person, the State contends that the *Terry* 'reasonable belief or suspicion' standard should be made applicable to aid the evidence-gathering function of the search warrant. *More precisely, we are asked to construe the Fourth and Fourteenth Amendments to permit evidence searches of persons who, at the commencement of the search, are on 'compact' premises subject to a search warrant, at least where the police have a 'reasonable belief' that such persons 'are connected with' drug trafficking and 'may be concealing or carrying away the contraband.'* " (Emphasis supplied.)

Noting that a similar argument 30 years ago in *United States v. Di Re,* 332 U.S. 581, 583–587, 68 S.Ct. 222, 223–225, 92 L.Ed. 210, was rejected, the Court set aside the judgment stating:

"... [W]e conclude that the searches of Ybarra and the seizure of what was in his pocket contravened the Fourth and Fourteenth Amendments. ...." (Emphasis supplied.)

In the instant case the Court of Appeals attempted to distinguish *Ybarra* because the tavern there was public and the premises in the instant case were private. The private versus public distinction is fallacious and ignores the real teachings of *Ybarra. State v. Broadnox,* 98 Wash.2d 289, 654 P.2d 96, 101 (1982). See also *State v. Broadnox,* 25 Wash.App. 704, 612 P.2d 391, 398 (Div. 1—1980) (Rengold, J., dissenting.) Regardless of the setting, *Ybarra* makes clear that constitutional protections are possessed individually. The Fourth and Fourteenth Amendments protect persons, not places.

Ybarra was on the premises of the tavern when the search warrant was being executed. In *United States v. Cole,* 628 F.2d 897 (5th Cir.1980), the defendant drove up to the subject premises (a duplex family dwelling) [10] as the officers arrived to execute a search warrant. As the defendant got out of his truck, an officer immediately frisked him for weapons, uncovering a small pistol in his belt which was seized and formed the basis of count five of the indictment, one of the counts upon which he was convicted. In finding that the frisk violated the defendant's Fourth Amendment rights and in setting aside the conviction based on count five, the Court wrote:

"The officer's pat-down of appellant cannot be justified by appellant's mere presence on the premises during the execution of the warrant. '[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person.' *Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238, 245 (1979). Mere presence neither obviates nor satisfies the requirement of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), that specific articulable facts support an inference that the suspect might be armed and dangerous. *Ybarra, supra,* 444 U.S. at 92, 100 S.Ct. at 343, 62 L.Ed.2d at 246–47. *See also U.S. v. Tharpe,* 536 F.2d 1098, 1100 (5th Cir.1976) (en banc).

"Nor does the fact that the officers testified that they had previously received information of an undisclosed nature about appellant constitute reason to search under *Terry.* Without knowledge of the content of that information the court cannot assess the reasonableness of the inference of dangerousness. The exceptions to the requirement of a warrant are narrow and jealously guarded, and '"the burden is on those seeking the exemption to show the need for it."' *Arkansas v. Sanders,* 442 U.S. 753, 760, 99 S.Ct. 2586, 2591, 61 L.Ed.2d 235, 242

(1979), quoting *U.S. v. Jeffers,* 343 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59, 64 (1951). This burden was not met by testimony that the officers involved had prior information about appellant, absent proof that the information was of a sort from which an inference of dangerousness could reasonably be drawn."

In *United States v. Clay,* 640 F.2d 157 (8th Cir.1981), the defendant approached his cousin's house and knocked on the door while officers were inside the house executing a search warrant. An armed officer dressed in a T-shirt and blue jeans opened the door. The defendant hesitated, took a step or two backwards, but did not run. The officer drew his revolver and ordered the defendant inside. He was frisked and a gun was found which formed the basis of the prosecution against him. On appeal the conviction was reversed. The court held that while the warrant authorized the officers to be on the premises the warrant did not authorize the search of anyone that came to the door during the time of the search. The officer having no reasonable suspicion the defendant was involved in any criminal activity or that he was armed and presently dangerous as required for a proper "pat down" search, and there being no nexus established between the contraband discovered during the search and the defendant at the time he was stopped and frisked, the conviction could not stand.

In *State v. Peters,* 5 Kan.App.2d 44, 611 P.2d 178 (1980), it was held that, absent probable cause, a warrant to search premises of residence did not authorize search of defendant, who coincidentally entered the residence after execution of the warrant, but who was not the owner or occupant of the residence and made no threat or gesture which caused the police to fear for their safety. See also *State of Washington v. Broadnax,* 98 Wash.2d 289, 654 P.2d 96 (1982); *Bell v. State,* 608 P.2d 1159 (Okl.Cr. App.1980).

---

**10.** The opinion does not make clear that Cole was an occupant of the apartment or duplex. It mentions that the "appellant *and the occu-* *pants* of the apartment were arrested." (Emphasis supplied.)

In *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), the United States Supreme Court held that if the evidence that a citizen's residence is harboring contraband is sufficient to persuade a judicial officer that an invasion of the citizen's privacy is justified, it is constitutionally reasonable to require *that citizen* to remain while officers of the law execute a valid warrant to search *his home.*

In *State v. Broadnax,* supra, 654 P.2d at p. 103, the Washington Supreme Court wrote:

"... In *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), the Court did permit officers executing a residential search warrant to *detain* the *occupant* of the home while the search was completed. The basis for that limited intrusion was that

[t]he connection of an occupant to that home gives the police officer an easily identifiable and certain basis for determining that suspicion of criminal activity justifies a detention of that occupant.

*Summers,* at 703–04, 101 S.Ct. at 2594. Thus, an occupant's constructive control over the premises which is the subject of a search warrant provides a sufficient connection with the suspected illegal activities to permit a detention of that individual. *A footnote in Summers, however, suggests that while occupants of private residence may be 'seized' while a proper search of the premises is conducted, any search of those occupants or others on the premises must meet the standards of Ybarra. Summers,* at 695–96 n. 4, 101 S.Ct. at 2590 n. 4.

"When *Summers* is read in conjunction with *Ybarra,* it becomes clear that persons not directly associated with the premises and not named in the warrant cannot be detained or searched without some independent factors tying those persons to the illegal activities being investigated. In other words, 'mere presence' is not enough; there must be 'presence plus' to justify the detention or search of an individual, other than an occupant, at the scene of a valid execution of a search warrant. *See generally Carr, Michigan v. Summers: Detentions Permitted While Search Warrant is Executed,* 8 Search & Seizure L.Rep. 115–19 (1981)....

" * * *

"*A person's mere presence at the scene of suspected criminal activity does not entitle police officers to search that individual. Neither may the police seize an individual, other than an occupant of the premises so as to make him available in case probable cause is later developed to arrest him.*

" * * *

"Absent some independent factors tying petitioner to the illegal activities on the premises, it was no more likely he was engaged in the criminal enterprise than that he was an innocent visitor on the premises. See *United States v. Vilhotti,* supra (323 F.Supp. 425 [S.D.N.Y. 1971]). The discovery of contraband during the execution of a search warrant does not alone establish probable cause to arrest all persons present." (Emphasis supplied.)

■ The Court of Appeals in the instant case sought to extend *Summers* to authorize the detention of a non-occupant during the execution of a valid search warrant, given the circumstances of the case and appellant's relationship with the house and its occupants. This relationship is based on the mere fact that one officer observed appellant park his car and walk to the house on several occasions during the officer's surveillance of the house. For the reasons set out by the Washington Supreme Court in *State v. Broadnax,* supra, and quoted above, we do not agree that *Summers* can be extended to a non-occupant under the circumstances of this case to justify a search unless the standards of *Ybarra* are met.

The Court of Appeals erred in both attempting to distinguish *Ybarra* and extending *Summers.*

■ The appellant in the instant case was not a target of the warrant. When the appellant entered the house in question dur-

ing the execution of the search warrant or was observed there by Officer Blake some 15 minutes or so after the officers had entered, he asked what was happening. There was no flight, no furtive gestures or sudden movements towards a pocket or other place where a weapon might be concealed. There were no threats made and no attempt made to resist detention. The appellant was not shown to be committing or about to commit any criminal offense, nor to be under the influence of alcoholic beverages or drugs. There is no showing that Officer Blake or other officers knew of any prior criminal record of the appellant, including drug arrests or convictions,[11] or had any reasonable suspicion that appellant was armed and dangerous.[12]

Nevertheless, appellant was caused to place his hands on the wall and was frisked. Officer Blake stated he was searching only for weapons for his own safety. The frisk was fruitless. No weapons or contraband were found. Appellant then asked to leave, but was detained for investigation.

There was not established any nexus between the appellant and the contraband found in the house and no showing that the appellant was an owner or occupant of the residence being searched. Officer Blake did say he suspected appellant to be involved in narcotics. This appears to be based solely upon the fact that Blake had seen appellant, whose name he did not know,[13] and his car on "several" occasions at the residence in question. Blake stated this was not the

reason he initially frisked appellant, but admitted that after the first fruitless frisk he detained the appellant because he had a hunch or suspicion that he might be involved in narcotics.[14]

■ Under the rationale of *Terry v. Ohio,* supra, the officer had no justification for the initial stop and frisk. Even if it can be argued there was justification for the first frisk when that frisk proved fruitless, the officer could not validly continue to detain the appellant and subject him to a second frisk or search. If in the course of a pat-down frisk the officer satisfies himself that the suspect has no weapons, the officer has no valid reason to further invade the suspect's right to be free of police intrusion absent probable cause to arrest. *Terry v. Ohio,* supra; *United States v. Thompson,* 597 F.2d 187 (9th Cir.1979); *State v. Allen,* 93 Wash.2d 170, 606 P.2d 1235, 1236–37 (1980).

The fruits of the second frisk were inadmissible as the frisk violated the Fourth and Fourteenth Amendments to the United States Constitution and Article I, § 9, Texas Constitution.

■ In summary, we conclude (1) that the combination arrest and search warrant did not specifically authorize appellant's arrest; (2) that appellant's mere presence on the premises at the time of the execution of the search warrant, without more, did not authorize his detention and subsequent

---

11. Because Sgt. Blake's actions toward the appellant were taken without an arrest warrant, the information to be considered is that available to the officer at the time of the stop and frisk. *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *United States v. Clay,* supra, at p. 160.

12. Before an officer places a hand on the person of a citizen in search of anything he must have constitutionally adequate grounds for doing so. In the case of the self-protective search for weapons, he must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous. *Sibron v. New York,* 392 U.S. 40, 60, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917 (1968); *Terry v. Ohio,* supra.

13. Blake admitted he didn't know appellant's name, but had been informed he was called "Bucko." The appellant offered evidence that he had no such nickname or was known as "Bucko."

14. There is nothing in the record to support the Court of Appeals' assertion that appellant had a known reputation as a drug user. The affidavit for warrant reflected that Blake during his surveillance had "observed vehicles belonging to persons known to be users of methamphetamine parked at the residence." There is nothing to show that only vehicles of drug users were seen at the residence in question. The record is clear that Blake did not know appellant was a drug user.

frisk or search;[15] (3) that while an occupant may be detained during the execution of a residential search warrant, this limited exception to the probable cause requirement does not extend to those merely on the premises; (4) that the discovery of evidence of criminal activity during the execution of the search warrant does not, without more, establish probable cause to arrest all persons present; (5) that since the officer had no reasonable belief that appellant was armed and presently dangerous, the pat-down frisk violated his personal rights of privacy; and (6) that even if the initial pat-down frisk was justified under the circumstances when no weapon was found, further intrusions were constitutionally impermissible absent probable cause to arrest, thus subsequent detention and frisk or search were invalid under the Fourth and Fourteenth Amendments, United States Constitution, and Article I, § 9, Texas Constitution.

For the foregoing reasons, we hold the trial court erred in overruling the motion to suppress and admitting the fruits of the search into evidence.

The judgments of the Court of Appeals and the trial court are reversed, and the cause is remanded to the trial court.

McCORMICK, J., concurs.

**15.** To the extent of the conflict, *Hernandez v. State,* 437 S.W.2d 831 (Tex.Cr.App.1968); *Johnson v. State,* 440 S.W.2d 308 (Tex.Cr.App. 1969); *Guzman v. State,* 461 S.W.2d 602 (Tex. Cr.App.1970); *Guerra v. State,* 496 S.W.2d 92 (Tex.Cr.App.1973); *Brown v. State,* 498 S.W.2d 343 (Tex.Cr.App.1973), and *Martinez v. State,* 504 S.W.2d 897 (Tex.Cr.App.1974), are overruled, as well as *Fisher v. State,* 493 S.W.2d 841 (Tex.Cr.App.1973), and *Rice v. State,* 548 S.W.2d 725 (Tex.Cr.App.1977).