Hazel v. State 






AFFIRMED 9 AUGUST 1990

NO. 10-89-214-CR
Trial Court
# 88-639-C
IN THE
COURT OF APPEALS
FOR THE
TENTH DISTRICT OF TEXAS
AT WACO

* * * * * * * * * * * * *

BRANDON EUGENE HAZEL,
   Appellant
v.

THE STATE OF TEXAS,
   Appellee

* * * * * * * * * * * * *

 From 54th Judicial District Court
McLennan County, Texas

* * * * * * * * * * * * *

O P I N I O N

* * * * * * *
This is an appeal by defendant Hazel from conviction for
possession of amphetamine, after a plea of guilty, for which he was
assessed 5 years in the Texas Department of Corrections and a $500
fine, with imposition of sentence suspended and probation for 5
years.
Defendant appeals on 1 point: "The trial court erred in
overruling [defendant's] motion to suppress evidence obtained in an
unlawful search and seizure of his person in violation of the
Fourth and Fourteenth Amendments".
The State's only witness at the motion to suppress hearing was
Officer Hoskins who testified that he and other officers executed
a search warrant for a residence in Waco, Texas. The search
warrant is in evidence. Defendant was not named in the warrant and
was not present at the time the police began to execute the
warrant.
Officer Hoskins testified he first became familiar with
defendant while working undercover; that he (Hoskins) had purchased
a large quantity of drugs from a person in an apartment complex
where defendant lived; that defendant been inside the apartment
while the undercover transaction occurred.
Officer Hoskins next met defendant during the execution of the
search warrant. The warrant named James Domengeaux as the person
whose residence was to be searched at 3623 Homan in Waco. 
Defendant is not specifically named in the warrant but the warrant
authorized the arrest of all other persons making their entry into
or escape therefrom the curtilage. The officers possessed probable
cause to believe that Domengeaux sold methamphetamine from his
residence. During a three-day period before execution of the
warrant a continued flow of traffic was observed in and out of the
residence. Between the time the officers executed the search
warrant and when defendant arrived, several persons arrived at the
house, some of whom possessed drugs.
Officer Hoskins testified that those who came to the house
were detained long enough to identify them; that pat down searches
were conducted to determine whether any weapons were possessed
thereby insuring the safety of the officers; and that since weapons
were discovered inside the residence, the officers were distrustful
of persons who arrived. When defendant arrived at the door of the
house being searched, the officers invited him in. Officer Hoskins
believed defendant to be involved in drug transactions based upon: 
(1) his knowledge of defendant's connection with the case where a
large quantity of marihuana was seized; (2) the existence of drugs
in possession of others who arrived at the house; and (3)
defendant's apparent and extreme intoxication on some sort of drug. 
Officer Hoskins asked defendant if he had any drugs. Defendant
responded he did not know if he had any or not. Officer Hoskins
testified he conducted the pat down search of defendant to
determine if he possessed any weapons. Pursuant to the pat down
search, he discovered a loaded syringe in defendant's breast pocket
containing a brown fluid which Hoskins tested immediately verifying
that it contained contraband. A further search revealed a bag of
white powder in defendant's shirt pocket.
Defendant asserts that he should not have been searched simply
because he was at the scene where a search warrant was being
executed, citing Lippert v. State, Ct.Crim.Appls, 664 S.W.2d 712;
Ter1ry v. Ohio, U.S. S.Ct. 88 S.Ct. 1868; and Worthy v. State, CA
(San Antonio), 773 S.W.2d 783. But the fact in those cases are not
the facts here.
We think defendant was properly searched and arrested pursuant
to the search warrant executed at the Domengeaux residence. The
warrant specifically authorized the arrest of "all other persons
making their entry into or escape therefrom said curtilage" of the
premises searched. The text of the affidavit described numerous
persons who came to the premises to buy contraband. And a similar
illegal purpose was manifested by facts known to the officers upon
defendant's arrival at the premises. Under the facts known to the
officers, they had probable cause to believe that persons who
arrived at this residence did so for the purpose of conducting
illegal activity.
As this search was being executed, the officers discovered
weapons inside the premises; and others arrived at the premises
with contraband. Officer Hoskins recognized defendant to have been
connected with a previous undercover operation involving a large
quantity of contraband. Defendant's intoxication was conspicuous. 
These specific and articulable facts, in the light of the officer's
experience and personal knowledge, together with inferences from
these facts, reasonably warranted the intrusion of defendant's
freedom and his detention for further investigation.
The pat down search was justified by the totality of the
circumstances. When asked if he had any drugs defendant's response
was an equivocal one. Officers were justified in being distrustful
of a person who had ties to a previous drug offense. Also
defendant's intoxication linked him to the ongoing drug activities
of the premises being searched. When such a person arrives
intoxicated and potentially carrying additional drugs at a house
where drug transactions had occurred and where weapons were
discovered, officers are justified in conducting a pat down search
for weapons.
The search of defendant was authorized by both the search
warrant and the totality of the circumstances. The seizure of
contraband from defendant's person and his arrest were proper. 
Defendant's point of error is overruled.
AFFIRMED
 
                               FRANK G. McDONALD
DO NOT PUBLISHChief Justice (Retired)

[Participating: Chief Justice Thomas, Justices Hall and Means and
Chief Justice McDonald (Retired)]



0;                                                                                     

      Gary Bedsole appeals his conviction for evading arrest. The trial court found him guilty and
assessed punishment at thirty days in jail. Bedsole contends on appeal that the evidence is
insufficient to prove that he knew the police officer was attempting to detain him. Finding the
evidence sufficient to support Bedsole's conviction, we affirm.
      In reviewing the legal sufficiency of the evidence, we must determine whether, after viewing
the evidence in the light most favorable to the verdict, any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.


 Section 38.04 of the Texas Penal
Code provides, "A person commits an offense if he intentionally flees from a person he knows is
a peace officer attempting to arrest him or detain him for the purpose of questioning or
investigating possible criminal activity."


 Bedsole only contests the sufficiency of the evidence
regarding the knowledge-of-an-attempt-to-detain element of the offense. He does not contend that
there is insufficient evidence to prove that he knew the person who was attempting to detain him
was a police officer. Therefore, the only question on appeal is whether, viewing the evidence in
the light most favorable to the verdict, any rational trier of fact could have found beyond a
reasonable doubt that Bedsole knew the pursuing officer was attempting to detain him.
      Richard Justice, a police officer assigned to the Houston Police Department's helicopter
division, testified that he was piloting a blue and white police helicopter on the morning of
December 24, 1991, when he was dispatched to assist in finding an assault suspect. Officer
Justice observed the suspect running away from the ground units. The suspect ran between a
number of condominium buildings and jumped two fences, falling once. While fleeing Justice the
suspect continually looked up at the helicopter and took evasive action in an effort to hide. After
running through a maze of apartment buildings, the suspect was apprehended by an officer on the
ground, and Justice left the scene.
      James Begeal, a police officer assigned to the Houston Police Department's patrol division,
testified that he was dispatched to an assault at an apartment on Westpark. Begeal spoke with the
complainant, who was very distraught and had a red mark on her neck and face. Begeal obtained
a description of the suspect and learned that he had been gone for only a short time. Begeal
suspected that when he arrived at the front door the suspect exited through the back door. Begeal
broadcast the suspect's description over the police radio and began to search for him on nearby
streets. 
      Begeal testified that he soon saw the suspect walking south along Woodchase. Begeal, who
was in a police uniform and a marked patrol car must have squeaked his brakes because the
suspect turned around and looked right at him. The suspect then started running to the east. 
Begeal pursued the suspect into a townhome complex before proceeding on foot. After speaking
with a security guard, Begeal learned that the suspect had run back across Woodchase. Begeal
advised the other units that the suspect was moving west and followed him into a condominium
complex. Eventually Begeal saw the suspect jumping over a fence, went over the fence after him,
ordered him to lie down, and arrested him. Begeal then took the suspect back to the original scene
where the complainant identified him as the person who had assaulted her. Begeal identified the
suspect as Gary Bedsole.
      Bedsole testified that, after having some "cross words" with his girlfriend, he left her
apartment through the front door. According to Bedsole, his truck would not start and he began
walking toward his brother's apartment, taking a shortcut. Although Bedsole testified that he
never saw a patrol car, according to his own testimony, his actions attracted the attention of one
observer who asked if he was breaking the law and another who asked if he was "a thief or
something."
      With respect to Bedsole's contention that the evidence was insufficient to show that he knew
Officer Begeal was attempting to detain him, we note that there is no direct evidence that Bedsole
had such knowledge. Direct and circumstantial evidence, however, are subject to the same
standard of review.


 Viewing the evidence in the light most favorable to the verdict, we conclude
that a rational trier of fact could find beyond a reasonable doubt that Bedsole knew Officer Begeal
was attempting to detain him for the purpose of questioning or investigating possible criminal
activity.


 As a result, we hold that there was sufficient evidence to support the conviction and
overrule Bedsole's single point of error.
      We affirm the judgment.
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice


Before Justice Cummings and
          Justice Vance
          (Chief Justice Thomas not participating)
Affirmed
Opinion delivered and filed December 16, 1992
Do not publish