**Michael Ladale MOORE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–91–00221–CR.**

Court of Appeals of Texas,
Tyler.

May 18, 1993.

**124**

Donald Killingsworth, Tyler, for appellant.

Amy Blalock, Asst. Dist. Atty., Tyler, for appellee.

Before BILL BASS, HOLCOMB and COLLEY, JJ.

COLLEY, Justice (Retired).*

Appellant was convicted in a bench trial of possession of 0.9 grams of rock cocaine and punishment was assessed by the court at twenty years confinement.

Appellant presents four points of error. He argues under his first two points of error that the court erred in overruling his motion to suppress "all physical evidence" seized "as a result of his illegal detention, arrest and/or search of [his person]...." Appellant, by his written pre-trial motion to suppress the evidence, alleges that such evidence was obtained in violation of his federal and state constitutional protections under the Fourth and Fourteenth Amendments to the UNITED STATES CONSTITUTION

and Article 1 Section 9 of the TEXAS CONSTITUTION.

Appellant argues under his third point of error, that the evidence is insufficient to sustain his conviction. He argues under his fourth point, that the court reversibly erred in admitting the cocaine contained in a match box seized from his person, over his objection that the chain of custody evidence did not demonstrate that the match box was the same container "taken from Appellant." We sustain points of error numbers one and two and reverse and remand.

At trial the State called four witnesses, Tyler Police Officers Charles Tompkins, Kenneth C. Lust, Frank Blake and Randall Lee Marcum, a chemist employed by the Texas Department of Public Safety (hereafter "DPS") at the Tyler crime laboratory of DPS. Appellant offered no evidence at trial.

The testimony of the police officers show that on the night of June 7, 1990, the Tyler Police Department received a call, presumably by telephone from a home located at 2506 West Front Street in that city, reporting a "suspicious noise, gunshots" shortly before 10:30 p.m. Police Officer Lewis and another unnamed officer were dispatched to that address, and after talking with several unnamed persons at the address given, Officer Lewis radioed Officer Kenneth C. Lust to assist in the investigation of the incident originally reported to the Tyler Police dispatcher. Lust testified, in response to Officer Lewis' call, that he drove to 2506 West Front Street, and after his investigation and interviews with numerous people, he determined that a crowd of people were standing in front of the residence located at 2506 West Front Street when an automobile occupied by "three known suspects drove by and shot at them several times." According to Lust, he was told that at least "five [or] eight" shots were fired at the group. Officer Lust said Appellant[1] and five other persons from the

---

* Paul S. Colley, Justice (Retired), Tyler Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court pursuant to Tex. Gov't Code Ann. § 74.003(b) (Vernon 1988).

1. Lust interviewed Appellant at the Tyler Police Station later that night.

group chose to file complaints for aggravated assault against the shooters.

State witness Officer Charles Tompkins overheard a radio transmission (apparently from Officer Lewis) and according to Tompkins

> She indicated that she had a large group of people there [at 2506 West Front Street] and some of them were gang members, and requested a couple additional units, particularly [officers] that were familiar with the gangs that knew the people that were involved.

Tompkins, after receiving the foregoing radio message from Lewis, drove to the location from the east. He "turned south on Parkdale and back west on Sunnyside." Tompkins stated that as he turned onto Sunnyside he saw a group of 15 to 20 people walking along the street. He testified that as he turned onto the street, all of the group, except Appellant, fled into a nearby wooded area or ran in between the houses located on the street. Tompkins said that the Appellant was walking by himself toward Front Street. Officer Tompkins then turned his patrol car around and drove back towards Front Street, the same direction in which Appellant was walking. The officer noted that the area was "relatively dark" but said there was at least one "street light" nearby. Tompkins said he stopped and parked his patrol car and "got out and told [Appellant] I needed to speak to him for a minute." Officer Tompkins said that Appellant heeded his words and walked back towards him. The officer stated that Appellant was wearing a "T-shirt and light colored shorts [short pants]." Appellant, according to Tompkins had nothing in his hands; and he was entirely cooperative and answered the questions [2] he first asked him. Tompkins related that as he approached Appellant, he did not know if Appellant "had been involved in [the] shooting ... [incident]." The officer did say that at the time he first encountered Appellant, he had no description of either "the victim or suspects" in the shoot-

ing incident. Officer Tompkins testified that in "a situation like this, we approach everybody with caution."

Tompkins further stated that when another officer, Officer Ball, arrived at Tompkins' location, Tompkins told Appellant that he wanted "to [pat] him down right quick." Tompkins said: "I turned him face away from me. I began giving quick frisk type search." Tompkins explained, "[s]pecifically, anybody that we stop at night [in] a dark area, we will probably stop and frisk them." Then Tompkins, in response to questions by the prosecution, said that it was "highly possible" that Appellant was carrying a "concealed weapon."

Officer Tompkins further described his frisk of Appellant in the following language: "I just simply ran the hands over the outside of the cloths and the 'waistline'." The witness further related that before he could complete the search of Appellant's outer garments, Appellant put his hand in his "right back pocket." The officer said he then "moved [Appellant's] hand away, and ... [resumed] ... feeling for any weapons again, he [Appellant] reached back in his pocket again." At that point, in accordance with Tompkins testimony, Tompkins and the other officer, "moved Appellant up to the car" and searched the back pocket retrieving a "match box and a pill container." [3] Officer Tompkins said he made the decision to arrest Appellant after he pulled the match box out of Appellant's pocket because he suspected the substance found in the match box was illegal drugs. Appellant was thereafter hand-cuffed and taken to the Tyler Police Department by this witness and his partner.

On cross examination Tompkins candidly admitted that when he first confronted Appellant, he "had no idea" whether Appellant had or had not "committed a crime." The officer further admitted on cross-examination that he "had no reason to believe

---

**2.** However, Tompkins never testified as to exactly what the question addressed to Appellant was nor Appellant's response to any questions asked.

**3.** The "pill container" was not introduced into evidence by the State.

that [Appellant] was involved in [the shooting incident]." [4]

■ We will now address Appellant's third and fourth points of error. The thrust of Appellant's arguments under these points is that the chain of custody of the match box containing the cocaine was irreparably broken. He contends, the match box introduced into evidence was not proved to be the same article seized by Officer Tompkins from the Appellant because Tompkins had put no marks on the box itself. We disagree. The match box was clearly linked to the Appellant. It was discovered in his pants pocket when he obviously tried to prevent its discovery during the "pat down." Thus, under any number of cases, including *Foster v. State*, 635 S.W.2d 710, 718–719 (Tex.Cr.App.1982), and *Hernandez v. State*, 538 S.W.2d 127, 130 (Tex.Cr.App.1976), when viewed in the light most favorable to the prosecution, the evidence admitted of Appellant's exclusive possession of the substance was sufficient to establish beyond a reasonable doubt that Appellant exercised care, control, and management over the cocaine at the time of its discovery by Officer Tompkins. Certainly, as the State argues, these facts produce a more than reasonable inference that Appellant knew that the cocaine was an illegal and controlled substance at the time. *See McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex.Cr.App.1985).

■ Officer Tompkins did not initial, or otherwise mark the match box, but he testified that after he removed the match box from Appellant's rear pocket, he kept it and the pill container in his own pocket until he secured an envelope from the police station and "put in an envelope and put it in the vice locker." Tompkins was recalled by the State, and when he was shown State's exhibit number 2 (the match box) he identified it as the article he removed from Appellant's "back pocket." However, Tompkins did say on direct examination, after being asked if he had "any doubt" that State's exhibit number 2 was

the "same item" he placed in the envelope said, "[t]o the best of my knowledge, this is the same box, the same contents."

On cross-examination he was asked, "I believe you testified to the best of your knowledge this is the same box. Are you saying you're not certain that this is it?" To that question, the witness replied, "[w]ell sir, without having any initials on it, there could be no way of [me] saying that this is the exact same box." But later on redirect, Officer Tompkins stated he placed the match box into State's exhibit number 1 (an envelope). He added that, he then put the envelope into the vice locker box himself. Tyler Police Sergeant Frank Blake, the officer in charge of "the vice narcotics unit" of the Tyler Police Department had earlier identified State's exhibit number 1 as a "Tyler Police Department evidence package" upon which was stamped: "Information for case number, property number, place for the defendant's name, description, location, seizing officer, witnesses, and date and time." Sergeant Blake testified that the envelope had written on it in the proper places, the case number, 90–20765, the defendant's name, Michael Moore, and the seizing officer, Officer Tompkins; Blake said he took the envelope and its contents to the DPS laboratory in Tyler. Blake, on cross-examination said he did not "open and look in the envelope". Following Blake's testimony, Randall Lee Marcum, a DPS chemist from Tyler, testified that on June 8, 1990, he received State's exhibit number 1 from Frank Blake, that he put his "unique laboratory case number and [his] initials" on the "6 × 9 brown envelope" (State's exhibit number 1). Marcum said he opened the envelope and found the match box which contained what the witness called "rocks". Marcum testified that the rocks were cocaine and weighed 0.9 grams. He identified the envelope that contained the match box as the article he received from Officer Blake after examination of the outside of the envelope which had the Tyler crime lab's unique number

---

**4.** In fact, the record supports the fact that Appellant was among the group of people fired upon.

and Marcum's initials thereon. Here, for the first time, the two exhibits, the envelope (State's exhibit number 1) and the match box (State's exhibit number 2), were offered into evidence. At that point however, the court sustained Appellant's objections thereto, whereupon Tompkins was recalled and gave his further testimony. After that testimony (the match box and the envelope) were re-offered, and the court overruled Appellant's objection to the admissibility of the evidence as well as Appellant's pretrial motion to suppress such evidence.

■ We conclude that the evidence summarized above demonstrates a sufficient chain of custody of the match box from Appellant's person to its offering in open court. Because there is no evidence of tampering shown in the record, the objection made by Appellant goes to the weight of the evidence, not to its admissibility. *Bird v. State,* 692 S.W.2d 65, 70 (Tex.Cr. App.1985), *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1238, 89 L.Ed.2d 346 (1986), and *Garcia v. State,* 537 S.W.2d 930, 934 (Tex.Cr. App.1976). Therefore, the trial judge did not abuse her discretion in admitting the cocaine contained in the match box into evidence. Appellant's point of error number four is overruled.

Likewise we conclude that the evidence, when viewed in the light most favorable to the prosecution, is sufficient to support the judgment of conviction and that a rational trier of fact could find every element of the offense to be established beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 n. 12, 99 S.Ct. 2781, 2789 n. 12, 61 L.Ed.2d 560 (1979); *Wilson v. State,* 654 S.W.2d 465, 471 (Tex.Cr.App.1983). Appellant's third point of error is likewise overruled.

Lastly, we consider Appellant's first and second points of error by which he argues that the search of his person that resulted in the seizure of the contraband was illegal in that it violated the protections afforded him by the Fourth and Fourteenth Amendments to the UNITED STATES CONSTITUTION and Article 1 Section 9 of the TEXAS CONSTITUTION; he also argues that under these points of error that the search "exceeded the scope of a [*Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] search ... without probable cause."

The State makes the argument in respect to these points of error that at the time Officer Tompkins initially confronted Appellant, the officer had knowledge of "specific and articulable facts" which warranted an investigative stop of Appellant under *Terry v. Ohio.* The State alleges, without supporting evidence, that Officer Tompkins "had a report of gang activity in the late evening." The State also alleges that Officer Tompkins, after he began questioning Appellant, somehow acquired a "sufficient degree of reasonable suspicion about the activity of the Appellant." That contention likewise finds no support, either in the State's brief or in the record. However, the State does correctly argue that the "totality of the circumstances surrounding the incident are examined in determining whether the [temporary] detention was reasonable and justified." (State's brief at 5). The State also alleges, again without support in the record, that "Officer Tompkins received a dispatch ... the nature of the call was gunfire *and gang activity.*" (Emphasis added). The call to the police dispatcher according to the record was "suspicious noise, gunshots." The State correctly points out that when Tompkins saw Appellant, the time was 10:30 p.m. and the place was dark. Hence, the State claims under these facts and the nature of the call, there was "created a reasonable suspicion" in Officer Tompkin's mind that "criminal activity was afoot and that there could be danger." (State's brief at page 7). That assertion is contrary to Tompkins' own testimony. In essence the State claims that the officer had a right to stop and "pat down" the Appellant, nothing more.

In response to the State's arguments, the Appellant contends that Officer Tompkin's seizure of the match box from his back pocket exceeded the scope of the investigative stop authorized by *Terry v. Ohio,* citing, *inter alia, Lippert v. State,* 664 S.W.2d 712, 721 (Tex.Cr.App.1984); *Davis*

*v. State,* 829 S.W.2d 218, 221 (Tex.Cr.App. 1992). Judge Onion wrote in *Lippert,* that, though a *Terry* stop and frisk is justified, once the officer satisfies himself

> [T]hat the suspect has no weapons, the officer has no valid reason to further invade the suspect's right to be free of police intrusion absent probable cause to arrest. *Terry v. Ohio, supra, United States v. Thompson,* 597 F.2d 187 (9th Cir.1979); *State v. Allen,* 93 Wash.2d 170, 606 P.2d 1235, 1236–1237 (1980).

*Lippert,* 664 S.W.2d at 721.

In *Davis,* Judge Malone wrote that,

> *Terry* permits a search for only those weapons that could reasonably harm the police officer. 'If in the course of a pat down frisk the officer satisfies himself that the suspect has no such weapons, the officer has no valid reason to further invade the suspects right to be free of police intrusion absent probable cause to arrest.' *Lippert v. State,* 664 S.W.2d 712, 721 (Tex.Cr.App.1984) (citations omitted).

*Davis v. State,* 829 S.W.2d 218 at 221.

█ In this case, assuming without deciding, that the circumstances and facts known to Officer Tompkins, given the hour and location of the confrontation, all as shown by the record, justified a *Terry* stop and detention and search for weapons, keeping in mind that at the time of the stop Appellant was dressed in a "T-shirt" and short pants. The fact that a match box, containing a small amount of cocaine, not a weapon was seized by the officers, and following *Lippert* and *Davis,* we conclude that the search did in fact exceed the scope of a *Terry* stop and frisk search as authorized by that case. Thus, we hold that the cocaine constituted fruits of an unlawful search and seizure in violation of Appellant's rights under the Fourth and Fourteenth Amendments to the UNITED STATES CONSTITUTION and Article 1 Section 9 of the TEXAS CONSTITUTION. Therefore, we sustain Appellant's points of error numbers one and two, reverse the judgment below and

remand the cause for a new trial consistent with this opinion.