OPINION
WARD, Justice.
Eleven toll collectors on the two international bridges between the cities of El Paso, Texas, and Juarez, Mexico, contended that they were employed by the City of El Paso, and filed this suit against the City and others to establish their positions and benefits as members of the classified service in the civil service system of the City of El Paso. The main point of the case is whether these employees automatically became City employees when the City created a mass transit system and purchased the two bridges, or whether these employees could legally be employed by an independent contractor operating under a City franchise. Trial was to the court, sitting without a jury, and judgment was entered which denied the toll collectors all relief which they sought. Findings of fact and conclusions of law were neither requested nor filed. We affirm.
*193 Prior to 1977, Plaintiffs were employed as toll collectors by El Paso City Lines, Inc., a private corporation, and collected tolls from pedestrian and motor vehicle traffic utilizing the northern one-half of two international bridges connecting the City of El Paso and the City of Juarez, Mexico. El Paso City Lines, Inc., owned the northern one-half of the two bridges and operated a bus line in the City of El Paso. In January, 1977, the City of El Paso purchased certain of the assets of El Paso City Lines, Inc., including the buses, facilities, equipment and northern one-half of the two international bridges. At the same time, the City purchased certain assets from two other bus lines which had operated under franchises granted by the City. The corporate entities of the companies were not purchased.
The City had previously secured bids from various transit management specialists to manage the City’s proposed mass transit system, and the proposal of Wesley A. Williams was accepted. Acting under the proposal, Transit Services, Inc. was created in December, 1976, with Williams as the sole stockholder, President and General Manager of that corporation. Under the management agreement, which was then made with the City, Transit Services agreed to provide the management and personnel necessary to operate the mass transit system owned by the City, and to collect tolls on the two international bridges. In January, 1977, the City took title to the two bridges, and at the same time Transit Services commenced its contractual management operations over the bridges and the mass transportation system. It employed thirteen toll collectors, which included the eleven Plaintiffs as well as some 190 other employees of the transportation systems whose assets had been purchased by the City.
Transit Services has operated under a managing agreement that is commonly known as a “cost plus fixed fee basis contract.” This means that the City reimburses Transit Services for all costs, including wages, incurred in fulfilling its obligations under the agreement. The agreement provides that Transit Services will provide the advisory and management services to operate the City’s public transit system, including the two City-owned international toll bridges, and Transit Services, not the City, under its contract, exercises exclusive and complete control over the Plaintiff toll collectors in all respects. In this connection, the Defendants’ proof was to the effect that Transit Services hired or fired all the employees, paid their wages, withheld for Federal income tax and all other deductions, and had exclusive control as to all other work activities. The Plaintiffs are neither carried on the City’s payroll nor maintained on the City’s personnel roster.
The Plaintiffs maintain that Section 10G of the El Paso City Charter sustains their claim as City employees. That Section is quoted in part as follows:
Whenever the City shall purchase or acquire an existing privately owned utility, all the employees thereof shall automatically, without preliminary or performance tests, be admitted to the benefits and protection of the City Service provisions of the City Charter and the seniority rights of such employees as they existed shall be preserved. .
In considering the Plaintiffs’ arguments, we first note the lack of findings of fact and conclusions of law. In this situation, all questions of fact are presumed found in support of the judgment and the judgment of the trial court must be upheld on any legal theory that find support in the evidence. Lassiter v. Bliss, 559 S.W.2d 353 (Tex.1977).
Without detailing the evidence to support the presumed findings, we note that it is more than ample to support the finding that the Plaintiffs have been employed since 1977 as toll collectors by Transit Services, Inc., which in turn is an independent contractor operating under City contract which the City in good faith entered. The City was amply empowered to exercise these corporate functions by contract just as any other private or public corporation. City of Big Spring v. Board of Control, 404 S.W.2d 810 (Tex.1966); City of *194 Crystal City v. Crystal City Country Club, 486 S.W.2d 887 (Tex.Civ.App.—Beaumont 1972, writ ref’d n. r. e.); 40 Tex.Jur.2d Rev., Part I, Municipal Corporation sec. 428. The City legally exercised its contractual powers in entering the management agreement with Transit Services.
The Plaintiffs argue that the plan of operation was a scheme to skirt the Civil Service guarantees made by Section 10G of the Charter, and that the employee termination cases should apply; that public policy in the matter of civil service laws is to place employees on a merit system and free from political control, and in any litigation the court must scrutinize all attempts at circumvention. City of San Antonio v. Wallace, 161 Tex. 41, 338 S.W.2d 153 (1960); City of Wichita Falls v. Harris, 532 S.W.2d 653 (Tex.Civ.App.—Fort Worth 1975, writ ref’d n. r. e.). Here, the termination cases do not apply as the employees were never hired by the City. At this point, we also note that the extended litigation in the case of Moncrief v. Tate, 561 S.W.2d 941 (Tex.Civ.App.—Fort Worth 1978) second appeal 586 S.W.2d 562 (Tex.Civ.App.—Fort Worth 1979), has been finalized by the Supreme Court opinion handed down January 19, 1980. See 23 Tex.Sup.Ct.Jour. 170 (Jan. 16, 1980). In that series of cases, civil service janitorial workers had been discharged and the county had contracted with an independent contractor to supply the same services. The Supreme Court rejected the contention made by the civil service employees that, since Terrant County was in good financial condition, the civil service positions could not be terminated even though the termination would effect substantial savings. There, evidence was introduced by the county showing large savings could be effected in going the independent contractor route. The Court sustained the position of the county, and held that since it had not been shown that the officials acted in bad faith, the discharge of the workers was upheld.
Here, the implied finding of the trial Court is to the effect that the City of El Paso entered into a good faith contract with an independent contractor which in turn hired its own employees, including these Plaintiffs.
What we have said here will not apply to certain events which are now occurring. Since oral argument, both parties have presented this Court with motions reflecting that the independent contractor is in the process of terminating its contract and that all mass transit employees, including the Plaintiffs, are being offered employment directly by the City. Those developments are not before us and are not now considered. At this point, we overrule the Plaintiffs’ position that Section 10G protected them under the facts now presented.
The Plaintiffs attack the validity of the contract between the City and Transit Services on the ground that there has been a violation of the notice given under the Texas Open Meetings Act, Article 6252-17 Sec. 3A(a), Tex.Rev.Civ.Stat.Ann. The evidence showed that on December 16, 1976, the City posted its agenda indicating the recommendation that the City enter a management contract with Wesley Williams regarding the new municipal bus system. On that date, the City Council then by motion authorized the Mayor to enter a contract with Williams effective January 1, 1977, with an interim agreement pending completion of a final contract. Since the open meeting law merely required that the City post notice of the subject upon which action was to be taken, no violation occurred. Stelzer v. Huddleston, 526 S.W.2d 710 (Tex.Civ.App.—Tyler 1975, writ dism’d).
The Plaintiffs’ final point complains of the action of the Court in failing to designate the proceeding as a class action to represent all of the 200 employees of El Paso Transit Services, Inc. The trial Court’s denial of a class action under Rule 42, Tex.R.Civ.P., will not be disturbed except upon a showing by the Plaintiffs of a clear abuse of discretion. Marshall v. Good Times, Inc., 537 S.W.2d 536 (Tex.Civ.App.—Fort Worth 1976, writ dism’d). Since we are not shown how the trial Court abused its discretion, the point is overruled.
*195 We have reviewed all of the Plaintiffs’ points and, whether discussed or not, they are all overruled. The judgment of the trial Court is affirmed.