IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-221-CR





PAUL ANTHONY DAVIS,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT



NO. 39,942, HONORABLE RICK MORRIS, JUDGE 



 




 Appellant entered a plea of not guilty before the court to the offense of possessing,
with intent to deliver, a controlled substance, cocaine, in an amount less than 28 grams. See Tex.
Health & Safety Code Ann. § 481.112 (Pamph. 1992) ("Texas Controlled Substances Act"). 
Punishment, enhanced by a prior felony conviction for possession of cocaine, was assessed at
forty-five years.

 In a single point of error, appellant asserts that the trial court erred in admitting
physical evidence obtained as the result of an illegal search and seizure. We overrule appellant's
point of error and affirm the trial court's judgment.

 Appellant's motion to suppress is directed to events occurring on January 11, 1991,
when the vehicle in which appellant was a passenger was stopped by an officer of the Temple
Police Department. Appellant was asked to get out of the vehicle, was searched, and contraband,
identified as cocaine, was seized from appellant's person.

 The series of events that resulted in the complained-of search and seizure began
with a telephone call to Agent William Dorsey of the Organized Crime Unit of the Temple Police
Department from a confidential informant shortly after 5:00 p.m. on January 11, 1991. Agent
Dorsey, a six-year veteran with the Organized Crime Unit, testified that his primary duty was to
enforce the narcotic laws.

 Dorsey related that the informant advised him that the appellant and another black
man were at the Waymon Manor Apartment's parking lot where appellant was selling crack
cocaine from a blue Jeep Cherokee. Dorsey stated there had been numerous searches and arrests
involving crack cocaine in the Waymon Manor area over the past two years.

 Dorsey had known the informant for approximately one year prior to the occasion
in question. During that time the informant had identified cocaine in Dorsey's presence and had
furnished Dorsey with information "ten to fifteen times" that had resulted in arrests.

 Dorsey and the informant had had previous discussions involving the Jeep described
as belonging to one Chad Pickett. The informant furnished Dorsey with the license number of
the Jeep, and Dorsey knew it to be the license number of Pickett's vehicle, but he did not record
the number on this occasion. Dorsey stated there had been an "ongoing" investigation of appellant
and that he had observed appellant in Pickett's blue Jeep on prior occasions.

 Dorsey relayed the information he had received from the informant to Sergeant
Gary Smith, a member of the Organized Crime Unit, who was on patrol in the area of the
apartments. Dorsey advised Smith as to appellant's description, the vehicle he would be in, that
another black male would be driving, and that they would shortly be leaving the Waymon Manor
property. The communication was made by mobile phone rather than police radio. After
furnishing Smith with this information, Dorsey left his office to join the search for appellant "to
stop him and search him for narcotics." Dorsey stated that narcotic dealers would remain at the
complex such as Waymon Manor for the short period of time needed to do business and "then get
out of there," because they knew "we would usually receive a tip."

 Sergeant (lieutenant at the time of trial) Smith testified that he knew appellant and
was familiar with Chad Pickett's blue Jeep. Upon receiving Dorsey's communication, Smith
proceeded toward the vicinity in question and spotted the blue Jeep Cherokee "approximately a
half of block" from Waymon Manor. Smith was unable to identify the two occupants of the Jeep
other than to observe that they were two black males. While Dorsey had not furnished him with
a license number, Smith related that the Jeep had all of the characteristics of Chad Pickett's blue
Jeep such as the size, number of doors, color, and type of seats. Smith stated that the sun was
going down but there was sufficient light to see without artificial lighting. Smith turned and
followed the vehicle. Prior to stopping the vehicle, Smith observed that the passenger leaned very
far to the left. Smith stated "it appeared he was placing something under the seat. He was very
active with his left hand and it was very obvious that he was doing something."

 Upon stopping the Jeep, Smith ordered the occupants to place their hands on the
dash board because of the nature of the offense and the movements he had witnessed in the
vehicle, and because "I was concerned for my safety." Smith recognized appellant, but was not
familiar with the driver. Shortly thereafter Dorsey arrived at the scene and asked appellant to step
from the Jeep.

 Dorsey patted appellant down, removing $433 in small bills and jewelry from him. 
Appellant was allowed to move behind the Jeep where he was watched by another officer who had
responded to a request for additional help. 

 Smith advised Dorsey about the movements he observed appellant make prior to
stopping the Jeep. A search of the area of the vehicle appellant occupied failed to reveal anything. 
Recalling that appellant's pants were partially undone when he had appellant step from the vehicle,
Dorsey reached into appellant's pants and "got ahold of his underwear in the front and pulled them
out to where I could look down into them." Dorsey observed a plastic bag between appellant's
legs, removed the bag, and found the contents to be what he believed was a large amount of crack
cocaine.

 The plastic bag and its contents were delivered to a chemist, Joe Budge, at the
Department of Public Safety. Budge testified that tests he made upon the contents revealed the
bag contained 3.51 grams of cocaine.

 Appellant points to the fact that both officers testified that they made an
investigative stop of appellant and his companion. Appellant asserts that absent specific
information about the location of a weapon or contraband, an officer is not justified in making a
search of a person beyond a pat-down. Appellant contends no probable cause existed to search
appellant's person incident to a lawful arrest. While the officers' subjective belief that the stop
was investigatory is a factor to be considered, the court will disregard their testimony if belied
by the facts of the case. Ruth v. State, 645 S.W.2d 432, 435 (Tex. Crim. App. 1979).

 The standard for reviewing the existence of probable cause is the "totality of the
circumstances" test set forth in Illinois v. Gates, 462 U.S. 213, 238 (1983). The "totality of the
circumstances" standard applies to warrantless as well as warrant searches. Angulo v. State, 727
S.W.2d 276, 278 (Tex. Crim. App. 1987). Officers may consider prior knowledge, personal
observation, and reasonable trustworthy information in making their evaluation of probable cause. 
Beverly v. State, 792 S.W.2d 103, 105 (Tex. Crim. App. 1990); see also Holladay v. State, 805
S.W.2d 464, 472-73 (Tex. Crim. App. 1991) (enumerating factors relied on by officers). 

 In Lippert v. State, 664 S.W.2d 712, 721 (Tex. Crim. App. 1984), cited by
appellant, the court held that even if the initial pat-down frisk was justified, when no weapon was
found, further intrusions were constitutionally impermissible without probable cause to arrest. 
In Lippert, a search and arrest warrant authorized officers to arrest each person named in the
affidavit at the described premises. Id. at 714. The defendant was not named in the warrant and
made an appearance on the premises during the execution of the warrant. The only information
possessed by the officers relative to the defendant's activities was that the defendant had been
observed parking his car and walking to the premises in question on several occasions while the
house was under surveillance. Id. at 715.

 In Coats v. State, 815 S.W.2d 715, 716-17 (Tex. Crim. App. 1991), also cited by
appellant, the court noted that the informer was not shown to have given the police any prior
information. Further, there was an absence of evidence connecting the defendant with an area that
was known as a source of drug activity. Id. at 717. The court found that while the officers'
reasonable suspicion that the defendant may have possessed narcotics may have justified the
original stop, there was no testimony that the officers gathered any additional information causing
this suspicion to ripen into probable cause. Id. at 717.

 Unlike Lippert and Coats, at the time appellant and his companion were stopped,
the officers had information from an informer who had been proven to be credible that the
appellant was making sales of crack cocaine at a named apartment complex. Agent Dorsey had
observed the informer identify cocaine and the informer advised Dorsey that he had seen crack
cocaine in appellant's hand. The premises where the sale was made had been the scene for
numerous searches and arrests involving crack cocaine over the past two years. There had been
an ongoing investigation of the appellant and the vehicle appellant was occupying by an officer
whose primary duty was to enforce narcotic laws. Appellant was stopped and searched at a
location about one-half block from the premises where the sales were reported to have been made. 
Only a short period of time separated the sales and the search of appellant. Just prior to the stop
the officer observed appellant "was very active with his left hand." 

 Probable cause for a warrantless arrest exists when the facts and circumstances
within the officer's knowledge and of which he had reasonably trustworthy information are
sufficient to warrant a prudent person in believing that the arrested person has committed or is
committing an offense. Britton v. State, 578 S.W.2d 685, 689 (Tex. Crim. App. 1979). 
Applying this standard to the facts in the instant cause, we conclude that probable cause existed
to arrest appellant and conduct a search of his person incident to an arrest at the time the officer
stopped the vehicle in which appellant was a passenger. 

 Assuming, arguendo, that probable cause did not exist at the time of the initial
stop, the officers clearly had articulable and reasonable suspicion to believe that appellant had
committed a crime to justify a temporary detention. See Terry v. Ohio, 392 U.S. 1 (1968);
Holladay, 805 S.W.2d at 469.

 Agent Dorsey stated that he conducted a pat-down of appellant because he always
feared for his safety when investigating narcotic offenses. The pat-down of appellant revealed that
he had $433 on his person, fifteen of the bills being of the twenty dollar denomination. Dorsey
stated that the going price for a rock of cocaine is twenty dollars. While it is unclear as to
whether the amount and denomination of the bills were determined prior to the search of
appellant's person, Dorsey testified that he knew appellant had been unemployed. While
appellant's wearing of gold necklaces is not inherently significant, Dorsey stated that it was
consistent with the attire of drug dealers. Dorsey learned from Smith that prior to Smith stopping
the vehicle, appellant had been very active with his left hand. Dorsey observed that appellant's
pants were partially undone when appellant stepped from the vehicle. By this time identity of the
vehicle as the Jeep that had been the subject of an ongoing investigation because of its use in drug
activity had been confirmed. Given the additional factors Dorsey learned after the initial stop,
reasonable suspicion ripened into probable cause to arrest appellant and search his person. See
Milton v. State, 594 S.W.2d 190, 194 (Tex. Crim. App. 1977). Appellant's point of error is
overruled.

 The judgment of the trial court is affirmed.


 

 Tom G. Davis, Justice

[Before Justices Aboussie, Kidd and Davis*]

Affirmed

Filed: January 29, 1992

[Publish]





* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (1988).