NO. 07-02-0303-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JULY 23, 2003

_____

CHASE FOSTER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2002-439304; HONORABLE CECIL PURYEAR, JUDGE

_____

Before QUINN and REAVIS, JJ., and BOYD, S.J.[1]

In this appeal, appellant Chase Foster challenges his conviction of possession of cocaine with intent to deliver in an amount of more than four grams but less than 200 grams. The punishment, enhanced by a jury finding that it occurred within 1,000 feet of a school, was assessed at confinement in the Institutional Division of the Department of

_____

[1] John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003).

Criminal Justice for 60 years. In presenting his challenge, appellant presents nine points for our determination. Finding no reversible error, we affirm the judgment of the trial court.

In his nine points, appellant asserts the trial court: 1) abused its discretion in failing to grant his motion to quash the jury panel after prejudicial statements were made in its presence; 2) erred in not suppressing testimony relating to appellant after his arrest and without his being "Mirandized"; 3) erred in not suppressing all testimony regarding any statements made by appellant while he was under arrest; 4) abused its discretion in permitting inadmissible hearsay testimony; 5) abused its discretion by admitting testimony from lay witnesses not properly qualified to express opinions as to the nature of the alleged contraband; 6) abused its discretion in admitting testimony about the composition of the alleged contraband when a proper predicate had not been laid for the receipt of such testimony; 7) & 8) erred in not granting appellant's motion for instructed verdict or, in the alternative, by not partially granting the motion and charging the jury only on a lesser-included offense; and 9) abused its discretion in permitting testimony at the punishment hearing as to appellant's alleged gang affiliations.

## Factual Background

On December 7, 2001, law enforcement authorities executed a search warrant of the premises located at 1516 East 25th Street in Lubbock. The State produced testimony that the house was located between 760 and 819 feet from a local school. The search warrant identified various individuals to be searched that did not include appellant. However, the warrant did authorize the search of persons "occupying and controlling" the

premises. As the Lubbock S.W.A.T. team arrived at the location, there were two individuals in the front yard. One of the individuals, not appellant, ran into the house as the officers approached. Officer Billy Koontz of the Lubbock Police Department testified that as he entered the house, he saw appellant in the living room, pursued him into the southeast bedroom, put him down and handcuffed him. Koontz testified that as he did so, appellant had a cell phone in one hand and was reaching for a black jacket located on a bed in the room.

A large quantity of suspected crack cocaine was located at the house. There was also an amount of cocaine located in the small pocket of the black jacket that the State's testimony showed weighed approximately 2.97 grams. The packaging of all the cocaine was similar and its color was the same which, according to the State's evidence, was an indication that all of the crack cocaine came from the same batch. The officers also found a .25 caliber pistol in the black jacket which contained a magazine with six live rounds. A search of the bedroom produced a shotgun in the attic crawl space, a second pistol under another bed in the room, and a digital scale under the mattress of the bed upon which the black jacket was located. Appellant had $433 in his pants pocket.

Officer Koontz averred that appellant was taken outside the house and because it was cold, asked for his jacket. Koontz told Investigator Paschall to take the black jacket outside, hold it up, and "try to make a determination if it was his [appellant's]." Over objection, Paschall was allowed to say that appellant admitted the jacket was his. Koontz said that he was standing in the doorway of the house and actually heard appellant admit

3

his ownership of the black jacket. Eventually, Koontz said, he took the jacket out to the investigator's car to take to the police department. As he did so, he said, appellant asked "several times" if he could have the jacket.

Officer Koontz testified that as the search was going on, he heard the occupants of the house, including appellant, having a conversation between themselves. He averred that appellant and another of the occupants said they knew who had "set them up" because the person had just called on the phone, and they were "going to get them as soon as they got out of jail." Koontz denied that any of the statements were in response to questions asked by the officers.

Appellant testified that he was already in the bedroom when the officers arrived and denied he was chased into the room. According to him, after he had been taken outside, an officer held up the black jacket and asked if it was his. At first, he said it was his jacket, but then realized it was not and denied ownership of it. At trial, appellant introduced a Bulls jacket he said was actually his and that he had worn at the time. He explained his possession of the money by saying he was changing schools, and needed the money to buy new clothes. Although appellant admitted he heard some of the others make statements about who set them up, he denied that he ever participated in any such discussion. Other portions of the evidence will be referred to as they become necessary to a discussion of the appeal.

4

Discussion

The colloquy that gives rise to appellant's first point occurred during his counsel's interrogation of the jury panel. Counsel was explaining the fact that an indictment by itself was not evidence of guilt. During the course of the colloquy, the juror had made statements that expressed an opinion to the contrary. At the conclusion, appellant's counsel asked permission of the trial judge to approach the bench for the purpose of making a motion "I would rather state at the Bench." The court replied, "[i]f it has to do with a juror, you can wait until we get through with *voir dire*." Counsel made no objection, nor did he do anything further until the completion of the voir dire of the panel as a whole. At that time, he unsuccessfully moved to quash the panel on the basis that the juror's remarks were hopelessly prejudicial and had unduly influenced the panel by "his stubbornly held assertion or belief that an indictment is evidence of guilt."

Appellant acknowledges that the propriety of the trial court's action is reviewed on an abuse of discretion test. *See Clark v. State*, 608 S.W.2d 667, 669 (Tex. Crim. App. 1980). Texas Rule of Appellate Procedure 33.1 requires that a timely request, motion, or objection be made to the trial court "with sufficient specificity to make the trial court aware of the complaint" and that the trial court ruled on the matter, or refused to do so, and the complaining party objected to the refusal to rule. Absent such an objection, motion or request, error is waived unless it is so egregious that the failure to object does not waive the error. *Janecka v. State*, 823 S.W.2d 232, 243 (Tex. Crim. App. 1990). The requirements of Rule 33.1 are not merely technical procedures by which appellate courts

5

seek to overrule points of error in a cursory manner. The failure to present a particular argument to the trial court, and then making such an argument to the appellate court, in effect usurps the trial court's function of ruling on such arguments and controlling the admission or exclusion of evidence at trial. The contemporaneous objection rule also aids judicial economy in calling the trial court's attention to what might be an error and giving it an opportunity to avoid possible reversal with all attendant delay and expense to all concerned. All that a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to be in a proper position to do something about it and obtain a ruling from the trial judge. *See Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992); *Cacy v. State*, 942 S.W.2d 783, 785 (Tex. App.–Waco 1997, pet. ref'd). However, there is an exception to that general rule in situations where the error is so egregious that it cannot be waived. *See Janecka*, 823 S.W.2d at 243 n.2 . We have examined the colloquy and it was not so egregious that an instruction to disregard would not have been sufficient to cure any error. Thus, by his failure to articulate his motion and obtain a ruling upon it until the examination of the jury panel as a whole was completed, appellant waived his complaint.

Moreover, even assuming arguendo that appellant's belated motion was sufficient to comply with the rule, the record still does not show reversible error. In order to show harm as a result of the trial court's denial of the motion, appellant must have established 1) that the other members of the panel heard the exchange, 2) that if they did hear it, they

6

were influenced by the exchange to the prejudice of appellant, and 3) that either the juror in question or another juror who may have had a similar opinion was forced upon appellant. *Callins v. State*, 780 S.W.2d 176, 188 (Tex. Crim. App. 1986). The record before us contains no such showing. The trial court did not abuse its discretion in its ruling and appellant's first point is overruled.

The gist of appellant's second point complaint is that the trial court erred by not suppressing the State's testimony that appellant admitted ownership of the black jacket found on the bed in the room in which appellant was arrested. He argues that the alleged admission was made after he was under arrest and at a time before he was given his *Miranda*[2] warnings. He further argues that the question addressed by Investigator Paschall at Officer Koontz's request was a custodial interrogation within the purview of *Miranda* and, because his reply was an admission that tended to establish his guilt or amounted to a declaration against his interest, the failure to suppress the testimony requires reversal. Parenthetically, appellant correctly points out that the difference between the terms *admission* and *confession* is no longer material in our determination of this point. *See Garner v. State*, 464 S.W.2d 111, 112 (Tex. Crim. App. 1971). Appellant also argues he did not waive his Fifth Amendment issue by giving his version of the conversation that took place after Paschall showed him the black jacket. In supporting that position, he cites *Alvarez v. State*, 511 S.W.2d 493 (Tex. Crim. App. 1973), as standing for the proposition

---

[2]*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

that an accused does not waive error by offering testimony to rebut or explain improperly admitted testimony.

We review a decision on a motion to suppress under an abuse of discretion standard. *Laselle v. State*, 923 S.W.2d 819, 823 (Tex. App.–Amarillo 1996, pet. ref'd). However, if the resolution of ultimate questions does not turn on an evaluation of credibility and demeanor, appellate courts review mixed questions of law and fact *de novo*. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Thus, in instances where the determinative facts are undisputed, an appellate court reviews *de novo* whether a statement was the product of improper custodial interrogation. *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996).

The term "custodial interrogation" cannot only include express questioning of a suspect, but also any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response. *Jones v. State*, 795 S.W.2d 171, 174 (Tex. Crim. App. 1990) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300-02, 100 S.Ct. 1682, 1689-90, 64 L.Ed.2d 297, 307-08 (1980)). In considering what police actions are "reasonably likely to elicit an incriminating response," it is necessary to note that *Miranda* did not hold that all statements obtained by police should be considered the product of interrogation. Rather, the *Miranda* Court stated:

> Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of

the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings, but whether he can be interrogated . . . .*Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.*

*Miranda*, 384 U.S. at 478 (emphasis added). Statements made after arrest must not only satisfy the *Miranda* doctrine, but must satisfy the Texas confession statute to be admissible pursuant to Texas Rule of Evidence 801(e)(2). *Edwards v. State*, 813 S.W.2d 572, 577-78 (Tex. App.–Dallas 1991, pet. ref'd). In pertinent part, article 38.22 of the Code of Criminal Procedure, the Texas confession statute, provides, "Nothing in this article precludes the admission of a statement made by the accused . . . that does not stem from custodial interrogation . . . ." Tex. Code Crim. Proc. Ann. art. 38.22 §5 (Vernon 1979).

Reiterated, the relevant testimony in this case was that after appellant had been arrested, he was detained and handcuffed. It was cold and appellant asked for his jacket. Officer Koontz, who heard the request, asked the investigator to take the black jacket and ask if it was the one appellant was requesting. Thus, because of appellant's initial request for a jacket, again heard by Koontz, his response when the officer brought the jacket to the door, that the proffered jacket was his, was not the result of improper custodial interrogation within the purview of *Miranda.* Neither was the response the result of an improper action by the officers. Under all the surrounding circumstances, appellant's admission that the black jacket was his was a volunteered admission that was admissible into evidence. Appellant's second point is overruled.

9

The thrust of appellant's third point is that because his arrest was illegal, the trial court reversibly erred by not suppressing all statements made by appellant while he was under arrest. In this case, at the time in question, the officers were executing a search warrant that authorized the search of a house at 1516 E. 25th Street in Lubbock. It also authorized the search of certain individuals named in the warrant, as well as "person or persons unknown to affiant," without further identification of those unknown persons. The State's evidence was that as the officers entered the house, they observed appellant in the front room, and as they entered appellant ran to the back room. He was partially undressed and was holding a cell phone. As Officer Koontz, the pursuing officer, caught appellant, the officer said he was reaching toward a bed upon which a black jacket was located. The officer said that he pursued appellant because a running person constitutes a security risk to the police team. Appellant was handcuffed, detained and "frisked" for weapons. Appellant and the other occupants of the house were taken outside and the officers searched the house. As a result of the search, they found what appeared to be crack cocaine in the house, as well as cocaine and a firearm located within the black jacket. In addition, Officer Koontz averred that he had personal knowledge that appellant had been at the house at various times prior to the search.

When a search warrant is executed upon a residence, an occupant of the premises may be detained for the duration of the search without a showing of probable cause. *Michigan v. Summers*, 452 U.S. 692, 704-05, 101 S.Ct. 2587, 2595-96, 69 L.Ed.2d 340 (1981); *Lippert v. State*, 664 S.W.2d 712, 722 (Tex. Crim. App. 1984). However, this

10

limited exception to the probable cause requirement does not extend to those merely on the premises at the time of the execution of the search warrant. *Lippert*, 664 S.W.2d at 722. Even so, a police officer, in the absence of probable cause for an arrest and search, may nevertheless validly stop a person and detain him briefly for questioning if he has a reasonable suspicion that the person may be connected with criminal activity, based upon specific and articulable facts and rational inferences from those facts. *Daniels v. State*, 718 S.W.2d 702, 704-05 (Tex. Crim. App.), *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986).

In this case, appellant's presence on the premises, coupled with the surrounding circumstances, were specific and articulable facts sufficient to give rise to a rational inference that appellant was an occupant of the premises. Those facts were sufficient to permit the officers to detain appellant briefly to ascertain whether he was in fact, an occupant of the premises. *See Summers,* 452 U.S. at 693, 101 S.Ct. at 2589 (upon arrival to execute a search warrant on residence, police encountered respondent descending the front steps and detained him); *Lippert*, 664 S.W.2d at 720-21 (appellant who entered house during the exercise of a search warrant was properly detained, even though subsequent search of his person was illegal in absence of flight or other attempt to resist detention). Appellant's flight from the entering officer was sufficient to constitute the offense of evading detention. *See* Tex. Penal Code Ann. §38.04 (Vernon 2003). That being so, the officers were entitled to arrest appellant for an offense committed in their

11

presence. *See Mottley v. State*, 841 S.W.2d 550, 551 (Tex. App.–Houston [1st Dist.] 1992, no pet.).

Additionally, at the time that appellant was detained, by the issuance of a search warrant, a magistrate had determined there was probable cause that persons inside the residence were involved in narcotics. Appellant was indisputably in the residence at the time they arrived, he was partially undressed, and he ran when the officers entered. Appellant's presence on the premises in a state of partial undress and his flight from the officers were specific and articulable facts that gave rise to a reasonable inference that appellant was an occupant of the premises. Those facts are sufficient to permit a brief detention of appellant to determine if he was, in fact, an occupant of the premises. *Salazar v. State*, 893 S.W.2d 138, 140-142 (Tex. App.–Houston [1st Dist.] 1995, pet denied, untimely filed). Bearing in mind that the admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion, *Osbourn v. State,* 92 S.W.3d 531, 537 (Tex. Crim. App. 2002), we conclude that under this record, the trial court did not abuse its discretion in its ruling. Appellant's third point is overruled.

In his fourth point, appellant contends the trial court abused its discretion by receiving into evidence inadmissible hearsay testimony to the effect that appellant was engaging in the illegal delivery of controlled substances. The sequence of events giving rise to this point began when Officer Koontz was asked on cross-examination if he had "some knowledge" as to who was living at 1516 E. 25th Street in Lubbock, the location that was the subject of the search warrant. As relevant to this point, the officer replied, without

12

objection, that among others, Charles Mitchell and appellant "were all staying at the residence off and on." Appellant did not object to the answer. On redirect examination, and over a hearsay objection, when asked if Mitchell had made any statements to him about who stayed at the residence, Officer Koontz was allowed to respond that appellant, along with several others, "were all staying in the southeast bedroom and he knew they had guns and they were selling crack." In supporting his argument that admitting the testimony and the harm that resulted from the testimony requires reversal, appellant also points to references by the State in its closing argument in the guilt/innocence phase to Mitchell's alleged statement.

In *Fuentes v. State*, 991 S.W.2d 267 (Tex. Crim. App. 1999), the court described Rule of Criminal Evidence 107 (the predecessor and progenitor of present Rule of Evidence 107), as the Rule of Optional Completeness, and commented that it had been recognized as addressing, or at least encompassing, the "opening the door" situation. *Id.* at 279. In doing so, it quoted with approval a text comment that "the necessity of completeness will justify the production, through the 'open door,' of extraneous offense evidence, hearsay, or other matter that would otherwise be incompetent." *Id.* The present rule is, in all material aspects, identical to that prior Rule of Criminal Evidence. Thus, the State was entitled to inquire further about exactly what Mitchell might have told the officer, and appellant's hearsay objection to the State's inquiry as to what Mitchell told the officer about "who stayed at the residence" was not well taken. While the portion of the answer as to appellant selling crack was nonresponsive and subject to objection, in the absence

13

of objection to that portion of the answer, appellant's right to complain was waived. *See* Tex. R. App. P. 33.1.

Moreover, even assuming arguendo the complaint was preserved for our review, reversal is not required. As appellant recognizes, the admission of inadmissible hearsay is non-constitutional error. *Lee v. State*, 21 S.W.3d 532, 538 (Tex.App.–Tyler 2000, no pet.). Texas Rule of Appellate Procedure 44.2(b) provides that non-constitutional errors that do not affect substantial rights must be disregarded. A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. U.S.,* 328 U.S. 750, 766, 66 S.Ct. 1239, 1253, 90 L.Ed.1557 (1946)). A criminal conviction should not be overturned because of non-constitutional error if, after examining the record as a whole, the reviewing court has fair assurance that the error did not influence the jury, or had but a slight effect on it. *See* Tex. R. App. P. 44.2(b)*; Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). The error must not be viewed in isolation, but in relation to the entire proceeding. *Id*. Without reiterating the extensive evidence in the case, suffice it to say that we have considered the record *en toto* and find it sufficient to give fair assurance that the error, if it was error, either did not affect the jury or, if it did, had but a slight effect. Appellant's fourth point is overruled.

Because of their close relationship, we will consider and discuss appellant's fifth and sixth points together. In his fifth point, appellant posits that the trial court abused its discretion in allowing police officers to testify, over objection, that the substance found at

14

the residence was cocaine because none of those witnesses possessed the requisite "scientific or expert qualifications or training" to entitle them to state that conclusion. In his sixth point, he complains that the trial court abused its discretion in admitting the testimony of the expert testifying for the State because the State failed to establish the proper predicate of reliability of the tests performed by the expert. Appellant is correct in arguing that even an experienced police officer, without other training, is not competent to testify as to the chemical composition of a substance because that is a matter for expert testimony. *See Bright v. State*, 556 S.W.2d 317, 321-22 (Tex. Crim. App. 1977) (citing *Curtis v. State,* 548 S.W.2d 57 (Tex. Crim. App. 1977)). The State responds to appellant's fifth point by arguing that the lay testimony by the officers was harmless because of the later expert testimony identifying the substance as cocaine. It responds to the sixth point complaint by arguing it was not preserved for our review and, even if the question was preserved, a proper predicate was laid for the admission of the testimony.

Appellant's sixth point complaint is directed at the expert testimony identifying the substances found in the black jacket and the house as cocaine. Under Texas Rule of Evidence 702, the trial court must determine whether the proffered scientific evidence is sufficiently reliable and relevant to help the jury in reaching accurate results. The burden is upon the proponent of the evidence to prove by clear and convincing testimony that the evidence meets that test. *Kelly v. State*, 824 S.W.2d 568, 572-73 (Tex. Crim. App. 1992). We will not disturb a trial court's decision to admit expert testimony absent an abuse of its discretion. *Hinojosa v. State*, 4 S.W.3d 240, 251 (Tex. Crim. App. 1999). To be

15

considered reliable, evidence based on a scientific theory must satisfy three criteria: 1) the underlying scientific theory must be valid; 2) the technique applying the theory must be valid; and 3) the technique must have been properly applied on the occasion in question. *Id.* at 250-251. That standard is not limited to novel scientific evidence, but applies to all scientific evidence offered under Rule 702. *Id.; see also Hurrelbrink v. State*, 46 S.W.3d 350 (Tex. App.–Amarillo 2001, pet. ref'd).

In this case, Scott Williams testified that he had worked for the Texas Department of Public Safety in the Crime Laboratory Division for a little over 14 years. His assigned duty there was to receive and analyze evidence that was submitted by law enforcement officers for drug analysis. He had a Bachelor of Science Degree in Chemistry and had received training from the Department of Public Safety headquarters in Austin. He had testified in court "many times," including previous testimony in the trial court on other occasions. He averred that it was possible to identify an unknown substance looking at the physical and chemical characteristics by conducting different types of tests and comparing them to purchased references as well as published literature. He performs this type of analysis frequently. He said he performed an analysis on the exhibit in question. He weighed the substance and performed some spot or color tests in which a reagent is used to look for color changes that tell what might be present in the substance being tested. He then performed an infrared spectroscopy test that is a confirmation test. As a result of the tests, he testified, he was able to conclusively identify the substances as cocaine. Under this record, the trial court did not err in deeming the chemist's testimony sufficiently reliable

16

and receiving it into evidence. Because that expert testimony was admissible, any error in allowing the police officers to testify as to the composition of the substances found was harmless. *See Hicks v. State*, 545 S.W.2d 805, 809-10 (Tex. Crim. App. 1977).

In considering appellant's sixth point, we have not overlooked the State's contention that by his failure to exercise his right to *voir dire* the expert witness prior to the time he was testifying, appellant waived any right to complain. Texas Rule of Evidence 705(b) states that in a criminal case, prior to the time the expert is allowed to give his opinion or disclose the underlying facts, the defendant *shall be allowed* to conduct a voir dire examination outside the presence of the jury, "directed to the underlying facts or data upon which the opinion is based." However, as we read the rule, this is a privilege accorded a defendant to give him an opportunity to ascertain if there is a basis for obtaining the exclusion of the evidence without the possibility of adversely affecting the minds of the jury. However, the fact that an appellant might choose not to exercise the privilege is not sufficient to forfeit his right to object and claim error in the admission of the expert testimony at the time it is received. Appellant's fifth and sixth points are overruled.

In his seventh point, appellant contends that the trial evidence was legally insufficient to support his conviction for possession of a controlled substance with intent to deliver and the trial court erred by not granting his motion for instructed verdict. In particular, appellant contends that although the evidence may be arguably sufficient to support a conviction of possession of cocaine in an amount of not less than one nor more

17

than four grams of cocaine, it is legally insufficient to sustain his conviction as a party possessing the aggregate amount of cocaine in the house for sale.

In evaluating the legal sufficiency of the evidence of guilt, we must view all of the evidence in a light most favorable to the prosecution to determine whether any rational trier of fact would have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App.), *cert. denied,* 522 U.S. 844, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997).

Section 7.02 of the Penal Code provides that a person is criminally responsible for an offense committed by the conduct of another if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids or attempts to aid the other person to commit the offense." Tex. Penal Code Ann. § 7.02 (Vernon 2003). The evidence is sufficient to convict under the law of parties where the defendant is physically present at the commission of the offense and encourages the commission of the offense by words or other agreement. In determining whether a defendant participated as a party, a court may look to events occurring before, during, and after the commission of the offense and may rely on actions of the defendant that show an understanding and common design to do the prohibited act. Further, circumstantial evidence may be used to prove party status. *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1996) (citing *Cordova v. State,* 698 S.W.2d 107, 111 (Tex. Crim. App. 1985), *cert. denied*, 476 U.S. 1101, 106 S.Ct. 1942, 90 L.Ed.2d 352 (1986). Although mere presence at the scene of

18

an offense is not alone sufficient to support a conviction, it is a circumstance tending to prove guilt that may be combined with other facts to show appellant was a participant. *Beardsley v. State,* 738 S.W.2d 681, 685 (Tex. Crim. App. 1987). If it has some relevance to the offense under prosecution, a jury may infer guilt from evidence of flight. *Burks v. State*, 876 S.W.2d 877, 903 (Tex. Crim. App. 1994). Factors that, among other circumstantial evidence have been considered by courts to show an intent to deliver are: 1) the nature of the place where the defendant was arrested; 2) the quantity of controlled substance in the defendant's possession; 3) the manner of packaging; 4) the presence of drug paraphernalia; 5) the defendant's possession of large amounts of cash; and 6) the defendant's status as a drug user. *Williams v. State*, 902 S.W.2d 505, 507 (Tex. App.– Houston [1st Dist.] 1994, no pet.).

In this case, there was evidence that appellant was partially dressed at the time the officers entered, he fled from the presence of the entering officer to a room where he reached for a black jacket on a bed in the room which was later discovered to contain 2.72 grams of cocaine and a handgun; a digital scale was found under the mattress of the bed; crack cocaine weighing 47.4 grams was found in the jacket pocket of another individual in the house; and the cocaine found in different areas of the residence was packaged in a similar manner and was colored the same, which was an indication that they all came from the same batch. Officer Koontz, an experienced narcotics officer, testified that the cocaine was packaged in a manner "consistent with the distribution of crack cocaine." He also averred that crack cocaine "is generally distributed by a group of folks, with each individual

19

within that group having a separate role" and it appeared that the four men located in the house were working together in the distribution of crack cocaine. Additionally, there was evidence that for a 17 year old, appellant was in possession of a substantial amount of cash. Moreover, there was the evidence that while the house was being searched, appellant and another of the occupants were overheard saying that they knew the person that "had set them up" and they were going to get that individual when they got out of jail. There was also testimony by Lubbock Detective Dwayne Gerber, one of the officers conducting the search, that Antwan Davis, one of the occupants found in the house, said the police could stop looking because they had "found everything we had" and appellant shook his head "like 'yeah.'" Suffice it to say that viewed in the light by which we must view it, the evidence was legally sufficient to sustain appellant's conviction as a party. Appellant's seventh point is overruled.

In his eighth point, appellant asserts the evidence was factually insufficient to sustain his conviction. In conducting a factual sufficiency review, we must view all the evidence in the record without the prism of "in the light most favorable to the prosecution." *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). In conducting our review, we must be mindful that the jury is the sole judge of the weight and credibility of the witness testimony. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). We may only set aside the jury verdict when it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Clewis*, 922 S.W.2d at 135.

20

In addition to the State's evidence which we have outlined above, appellant presented three witnesses besides himself. Tommy Anderson testified that appellant had worked for him and that he paid him $200 on December 2, 2001. He also admitted that he had been convicted of two thefts and burglary of a habitation. Appellant's mother, Carolyn Foster, also testified that she occasionally bought her son clothes, he owned three jackets, one of which was a Bulls jacket, which was received into evidence, and she gave him $60 shortly before the occasion in question. Appellant's aunt, Cheryl Butler, averred that she had given appellant $50 to take to the mall shortly before he was arrested.

Appellant testified that he had gone over to the house in question about 15 to 20 minutes before the police arrived. He and the others had stopped there to fix a car before they went on to the mall. Appellant went into the house to change clothes when his cell phone rang. He looked at the caller I.D. and saw that it was his friend Quinton's girlfriend calling. He had his pants down because he was going to change clothes before going to the mall to purchase some clothes. He was leaving the bedroom to take the phone to Quinton, and "that's when they came in." He said when he saw the officers, he put the phone on the floor in front of him and got down on the floor. The money he had in his pocket was the result of his work and the gifts from his mother and aunt. He denied he ran from the officer coming towards him or that he reached for the black jacket, which was a different size from the one he owned. He denied that he had been wearing the black jacket and stated he was wearing the Bulls jacket that night. Although he first admitted the black jacket was his, he immediately denied ownership when he saw it better. Appellant also denied that he possessed any firearms or illegal drugs. He denied that he had any

21

conversations with the other men while the police were searching the house, and averred the officers were lying when they said he indicated any agreement with Antwan Davis's remark that the officers had found all the contraband. The officers also lied when they said he was involved in a conversation about "getting" someone when they got out of jail.

Although the evidence as to appellant's involvement in the offense was contradictory, it was well within the jury's province to determine the credibility and weight to be given the contradictory evidence. After reviewing the evidence as a whole, we cannot say the jury verdict was so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. Appellant's eighth point is overruled.

In his ninth point, appellant asserts the trial court abused its discretion by admitting evidence at the sentencing hearing about appellant's alleged gang membership. Citing *Fuller v. State*, 829 S.W.2d 191 (Tex. Crim. App. 1992), the State responds that, although appellant did object to any gang testimony prior to the commencement of the punishment hearing and was granted a running objection, that was not sufficient to preserve the question because appellant did not move to strike the testimony when the State rested. The State is correct. In the *Fuller* case, the court noted that Fuller's objection to gang testimony "ultimately proved meritorious." However, it went on to explain that it was "constrained by rules of procedure to hold that Appellant forfeited the right of appellate review by his failure to move that it [the gang testimony] be stricken after the close of the State's evidence." *Id.* at 198. In explaining the rule, the court commented:

The rule may seem harsh to some, but it is a fundamental feature of our adjudicatory system. Simply put, a trial judge cannot err in most cases by overruling a relevancy objection so long as the challenged evidence might be "connected up" before the end of the trial. In the instant case, the trial court's ruling was correct when made and only became challengeable when a connection by the close of the case had not been made. And it is not the judge's duty to notice whether the evidence is eventually "connected up" in fact. Instead, the objecting party must reurge his relevancy complaint after all the proof is in, ask that the offending evidence be stricken, and request that the jury be instructed to disregard it. Otherwise, his objection will be deemed forfeited on appeal. [citations omitted].

*Id.* at 198-99. Appellant also objected that the prejudicial effect of the evidence would exceed its probative value. However, the record does not bear that objection out and the trial court did not abuse its discretion in overruling that portion of the objection. The rationale explicated by the *Fuller* court is also applicable here. We must, therefore, overrule appellant's ninth and final point.

In sum, all of appellant's points are overruled and the judgment of the trial court is affirmed.

John T. Boyd
Senior Justice

Do not publish.