Affirmed and Opinion filed February 19, 2004









Affirmed and Opinion filed February 19, 2004.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00924-CR 

NO. 14-02-00925-CR

 

COREY DAWAN
MORRISON,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 351st
District Court

Harris County, Texas

Trial Court Cause Nos. 901,102
& 918,723

 



 

O P I N I O N

Appellant Corey Dawan Morrison challenges
his convictions for possession with intent to deliver a controlled substance
and possession of a firearm by a felon. 
In three points of error, appellant argues: (1) the trial court erred
when it denied his motion to suppress evidence because the evidence was
obtained during an illegal search; (2) he received ineffective assistance of
counsel; and (3) the prosecutor assaulted appellant during her closing argument
in the punishment phase of trial.  We
affirm. 

 








I. 
Factual and Procedural Background

Officer K.Y. King of the Houston Police
Department=s Narcotics Division obtained a
combination search and arrest warrant on January 30, 2002, after a confidential
informant purchased cocaine from a man known as AGucci.@  The warrant authorized the arrest of Aany person(s)[]
including but not limited to . . . [>]Gucci[=],@ and the search of
a business known as Video 2000, where the informant had purchased the
drugs.  The officer conducting
surveillance for the narcotics division monitored activity just prior to the
raid at Video 2000, which was located in a strip center.  He testified that, shortly after surveillance
began, AGucci,@ later identified
as Kenneth McDonald, left the store for approximately 20 minutes.  McDonald had returned and was in the video
store when a white Escalade arrived.  At
this point, the raid team was en route to execute the warrant.  Two males (one later identified as appellant)
and a female exited the vehicle and entered the store.  McDonald then left Video 2000 and walked to a
convenience store in the same strip center. 
The raid team arrived,  took
McDonald into custody at the convenience store, and brought McDonald back with
them to Video 2000. 

The four individuals in the video store
(McDonald, appellant, another male, and one female) were told to lay on the
floor while officers performed a search of the premises.  Accounts of what occurred next differ.  According to testimony from at least one of
the officers, the individuals were, at some point during this process, patted
down, handcuffed, and placed in chairs. 
During the suppression hearing, appellant testified that he was never
placed in a chair, but was instead on his knees.  Officer King testified that she then noticed
appellant Adigging around@ behind him and
told him to be still.  Sergeant Garcia,
whose primary objective was to secure the scene, also testified that appellant
had his hands behind his back Aas if trying to
place his hands . . . in the back of his pants.@  Officers King and Massey notified Officer
Siewert that appellant was told several times to Aquit digging in
the rear of his pants.@  At
the suppression hearing, appellant denied that he was ever Adigging@ in his pants. 








When appellant apparently refused to
remain still, Officers Siewert and Massey took him to a back room of the store
where the adult movies were displayed. 
Once in the room, Officer Siewert testified that he pulled appellant=s pants back and
observed a piece of plastic protruding from appellant=s buttocks.[1]  At the time, three other members of the raid
team were present.  Officer Siewert
testified that he then had appellant pull his pants down and bend over.  He retrieved the plastic bag, the contents of
which were later identified as Arocks@ of crack
cocaine.  During this period, appellant
was resisting the officers and, consequently, the officers had to physically
bend him over to retrieve the bag. 
Appellant claimed, during the suppression hearing, that officers were
holding the bag against his buttocks, he could not reach it, and it did not
belong to him.  After recovery of the
bag, appellant was placed under arrest. 
While conducting the search of the premises, the officers also seized
several guns and body armor from the video store.

Appellant was charged by indictment with
possession with intent to deliver a controlled substance and with possession of
a firearm by a felon.  A jury found
appellant guilty of both offenses and, after finding two enhancement paragraphs
to be true, assessed punishment at forty-five years= confinement for
possession of a firearm by a felon and seventy-five years= confinement for
possession with intent to deliver a controlled substance. 

Appellant filed a motion for new trial on
September 23, 2002, alleging prosecutorial misconduct, jury misconduct, and
trial court error in instructing the jury on the law.[2]  The trial court denied the motion by written
order the following day.  The trial court
then held a








 hearing on the
same motion on January 7, 2003, and again denied the motion.  In doing so, the trial court issued findings
of fact and conclusions of law.    

II. 
Analysis and Discussion

A.      Motion
to Suppress

In his first point of error, appellant
contends the police did not have reasonable suspicion or justification to detain
and search him and, by doing so, violated his Fourth and Fourteenth Amendment
rights under the United States Constitution and article I, section 9 of the
Texas Constitution.[3]
          

In reviewing a trial court=s ruling on a
defendant=s motion to suppress, an appellate court
must first determine the applicable standard of review.  The Court of Criminal Appeals has made clear
that while appellate courts should afford almost total deference to the trial
court=s determination of
the historical facts, mixed questions of law and fact not turning upon an
evaluation of credibility and demeanor are to be reviewed de novo.  Guzman v. State, 955 S.W.2d 85, 87B88 (Tex. Crim.
App. 1997).  Specifically, questions of
reasonable suspicion and probable cause should be reviewed de novo on
appeal.  Id. at 87.  This is because the trial judge is not in a
better position than the reviewing court to make that determination.  Id. 
Similarly, whether a defendant was Adetained@ within the
meaning of the Fourth Amendment is a mixed question of law and fact that is
reviewed de novo.  See Hunter v. State,
955 S.W.2d 102, 105 n.4 (Tex. Crim. App. 1997). 

 

 

 








1.       The
Detention        

As part of his first issue, appellant
contends that his mere presence on the premises during the execution of the
search warrant did not justify his detention upon the arrival of the raid team.
         

Pursuant to the United States and Texas
Constitutions, a defendant is detained if, from his or her perspective, there
has been such a display of official authority that a reasonable person would
not have felt that he was free to leave. 
United States, v. Mendenhall, 446 U.S. 544, 554 (1980); Chambers
v. State, 866 S.W.2d 9, 19 (Tex. Crim. App. 1993).  The record from the hearing on the motion to
suppress indicates that when the raid team entered Video 2000 through the
Success Entertainment entrance, all of the individuals in the store, including
appellant, were handcuffed and remained in the store while officers executed
the search warrant.  Appellant testified
they were commanded to lay on the ground; Officer Siewert could not recall
whether it occurred in this instance, but stated that he requires people to get
on the ground when he is conducting search warrants.  Under these circumstances, a reasonable person
in appellant=s position would not have believed that he
was free to leave and, thus, a detention occurred.

When a search warrant is issued for a
particular residence, a judicial officer has made an objective determination
that there is probable cause to believe someone in the residence is committing
a crime.  Michigan v. Summers, 452
U.S. 692, 703B04 (1981). 
Therefore, when the warrant is executed, a person who is an occupant of
the premises may be detained for the duration of the search.  Id. 
This limited exception to the probable cause requirement does not,
however, automatically extend to those who are merely on the premises at the
time of the execution of the search warrant. 
Lippert v. State, 664 S.W.2d 712, 721B22 (Tex. Crim.
App. 1984).








Appellant relies heavily on Lippert
for the proposition that, like in Lippert, he was merely on the
premises, the combination arrest and search warrant does not in any way
describe or refer to him,[4]
and, therefore, the officers were not justified in detaining him absent
probable cause.  In Lippert, the
Court of Criminal Appeals found that the combination search and arrest warrant,
in addition to the supporting affidavit, did not contain any reference to
appellant or any information which would constitute probable cause that he
possessed a controlled substance.  Id.
at 716.  The court further concluded that
appellant=s mere presence on the premises at the
time of the execution of the search warrant, without more, did not authorize
his detention and subsequent frisk or search. 
Id. at 721B22. 
According to Lippert, to justify the detention and search of a
person, other than an occupant, who is present on the premises during the
execution of a valid search warrant, there must be some independent factors,
other than mere presence, that tie the person to the unlawful activities on the
premises.  See id.








Even if the combination arrest and search
warrant does not refer to appellant, the Lippert case is distinguishable
from the facts before this court.  In Lippert,
the appellant was not in the residence or on the premises when the search for
narcotics began, but rather arrived 15 to 30 minutes after the raid team
commenced execution of the warrant.  Id.
at 715.  In this case, appellant was
inside the video store when the raid team arrived.  An officer executing a warrant may
temporarily detain a party to determine whether the individual is an occupant
of the premises being searched.  See
Salazar v. State, 893 S.W.2d 138, 142 (Tex. App.CHouston [1st Dist.] 1995, (pet. ref=d, untimely filed)
(stating that appellant=s presence on and flight from the premises
were specific and articulable facts to give rise to inference that appellant
was occupant).  In this case, appellant
testified at the suppression hearing that he was taking inventory when the
officers arrived at the store.  According
to the testimony at trial, officers were not aware of it at the time, but
appellant is the co-owner of the business. 
Even without this knowledge, it would have been reasonable to infer that
someone in the process of taking inventory inside the store is more than
someone merely on the premises. 
Therefore, appellant=s presence coupled
with further evidence linking him to the business were sufficient to justify
appellant=s detention as an occupant of the
premises. 

In Michigan v. Summers, the United
States Supreme Court cited several justifications for detaining an occupant of
a premises being searched for contraband pursuant to a valid warrant, namely
(1) preventing flight in the event incriminating evidence is found; (2)
minimizing the risk of harm to the officers; and (3) conducting the search in
an orderly fashion.  See Summers,
452 U.S. at 702B03 (stating these factors in the context
of a narcotics search at a residence). 
Here, Officer Siewert testified that the purpose of detaining everyone
upon entry was for officer safety.  He
stated that all search warrants are considered high risk because officers
encounter weapons more often than not. 
In addition, Officer Siewert testified that the strip center where the
video store was located is a high drug-trafficking area.  The Summers Court, while finding no
special danger to the police in the situation before the Court, did note that
the execution of a search warrant for narcotics is Athe kind of
transaction that may give rise to sudden violence or frantic efforts to conceal
or destroy evidence.@  Summers,
452 U.S. at 702.  Because these same
justifications were present in this case, appellant=s detention when
the raid team entered the video store did not violate his constitutional
rights.  

2.       The
Initial Patdown and Subsequent Search

Appellant also contends that the initial
patdown and subsequent search violated his right to privacy because the
officers did not have a reasonable belief that he was armed and presently
dangerous.  








Once an officer has validly detained an
individual, the officer may conduct a limited protective search for weapons if
he has a reasonable fear for his safety. 
Terry v. Ohio, 392 U.S. 1, 27 (1968).  This does not mean the officer must be
absolutely certain that the individual is armed.  See id.  Rather, the issue is whether a Areasonably prudent
man in the [same] circumstances would be warranted in the belief that his
safety or that of others was in danger.@  Id. 


In Ybarra v. Illinois, the Supreme
Court considered a similar issue involving the execution of a warrant
authorizing the search of a tavern and of a man named AGreg.@  Ybarra, 444 U.S. at 88.  In that case, the appellant was a patron at
the tavern.  Id.  The officers entered the tavern and one of
the officers conducted a patdown of each customer in the tavern.  Id. 
The Court concluded that a patdown of a tavern patron merely on the
premises during the execution of a search warrant without a reasonable belief that
that patron was armed and presently dangerous did not justify the
search.  Id. at 92B93 (emphasis
added).

While the facts in this case are similar
to those in Ybarra, there is an important distinction.  In Ybarra, the initial frisk led to
the second search when the officer first felt what he described as Aa cigarette pack
with objects in it.@  Id.
at 88B89.  The second search involved the officer=s relocation and
retrieval of the pack, which contained a substance that later turned out to be
heroin.  Id. at 89.  In this case, the initial patdown did not
reveal anything.  It was not until the
officers observed appellant Adigging@ in the back of
his pants that they determined a second search was necessary.  Therefore, although this search may have been
akin to the one in Ybarra, no evidence was produced from this search or
led to the subsequent search.  Article
38.23 requires the exclusion of evidence Aobtained by an
officer or other person in violation of any provisions of the Constitution or
laws of the State of Texas, or of the Constitution or laws of the United States
of America.@  Tex. Code Crim. Proc. Ann. art.
38.23(a) (Vernon Pamph. 2004).  Evidence
should be excluded once a causal connection between the illegality and the
evidence is established.  Roquemore v.
State, 60 S.W.3d 862, 870 (Tex. Crim. App. 2001).  Thus, even if the initial frisk was improper,
no evidence was obtained from the patdown, nor did it lead to the discovery of
evidence that the trial court should have excluded.  








After the initial patdown, Officer Siewert
testified that he was notified by Officers Massey and King that appellant was
attempting to place his hands in the rear of his pants.  Appellant was still handcuffed at this
point.  According to Officer Siewert=s testimony, the
officers continually ordered him to quit Adigging@ in his
pants.  When appellant refused, Officers
Siewert and Massey took appellant to a separate room in the video store.  It was there that the search of appellant=s pants revealed
the plastic bag containing rocks of crack cocaine.  Officer Siewert testified during the hearing
that the reason for the subsequent search was to check for a weapon or any
contraband.  He stated that, based on his
training and experience, when someone has their hands in their pants, it
indicates that the person is trying to conceal or possibly destroy evidence.

The Court of Criminal Appeals has
enumerated many factors, helpful but not conclusive in themselves, to consider
in determining whether a search is invalid. 
Worthey v. State, 805 S.W.2d 435, 438 (Tex. Crim. App.
1991).  Such factors include: (1) no
flight or furtive gestures or sudden movements towards a pocket or other place
where a weapon might be concealed; (2) no threats made and no attempt made to
resist detention; (3) appellant is not shown to be committing or about to
commit any criminal offense; and (4) appellant does not seem to be under the
influence of alcoholic beverages or drugs. 
See Lippert, 664 S.W.2d at 721. 
The Lippert case is distinguishable from this case because
appellant made several movements towards the rear of his pants.  See Worthey, 805 S.W.2d at 439.  He continued to move his hands toward the
back of his pants after being told by officers to remain still.  See id.  








Under the circumstances, the scope of the
search was also valid.  In Terry v.
Ohio, the Supreme Court stated, A[t]he scope of the
search must be >strictly tied to and justified by= the circumstances
which rendered its initiation permissible.@  Terry, 392 U.S. at 19 (quoting Warden,
Md. Penitentiary v. Hayden, 387 U.S. 294, 310 (1967) (Fortas, J.,
concurring)).  In Bell v. Wolfish,
the Supreme Court held that a reasonableness inquiry requires a court to
balance the need for the particular search against the invasion of the personal
rights that the search entailed.  441
U.S. 520, 559 (1979).  Courts must consider
the scope of the particular intrusion, the manner in which it is conducted, the
justification for initiating it, and the place in which it is conducted.  Id.; McGee v. State, 105 S.W.3d
609, 615 (Tex. Crim. App. 2003) (applying this standard in the context of a
visual body-cavity search incident to arrest), cert. denied, 124 S.Ct.
536.  

As for the scope of the intrusion, we must
evaluate whether legitimate interests of law enforcement outweighed the Ademeaning, dehumanizing,
[and] intrusiveness of a visual body cavity search.@  See id. at 616; Bell v. State,
___ S.W.3d ____, ____, Nos. 05-00-01291-CR, 05-00-01292-CR, 2003 WL 21100727,
at *2,(Tex. App.CDallas May 15, 2003, pet. ref=d) (classifying
very similar search as a visual body-cavity search and reviewing the same
factors).  In reviewing the manner of the
search, we consider, in part, whether the search was violent and whether the
officer had experience in conducting such searches.  See McGee, 105 S.W.3d at 616.  The level of justification necessary for the
search varies depending on where the search took place.  Id. at 616B17.  Searches in prisons, for instance, require
less justification because the suspects in those cases possess a diminished
expectation of privacy.  See id.
at 617.  Finally, the search must be
conducted in a hygienic environment and should not be conducted in a Apublic place.@  See id.  

Here, the search was conducted in a small
room with four members of the raid team present.  The room was away from public view and from
where the other individuals were detained. 
See id. (finding secluded area of fire station sufficient to
protect appellant=s privacy interests).  Officer Siewert testified that he pulled
appellant=s pants back and observed a piece of
plastic protruding from appellant=s buttocks.  It was only then that Officer Siewert
requested appellant pull his pants down and bend over so that Officer Siewert
could retrieve the bag.  While it may
have been an uncomfortable experience for appellant, there is no indication
that it was violent in any way.  Officer
Siewert also testified that it is commonplace for people to conceal their
narcotics in this manner.  He explained
that, based on his training and experience, when someone has their hands in
their pants, it indicates someone is trying to conceal or possibly destroy
evidence.  We conclude the officer=s search was
reasonable under the circumstances.  








The trial court did not err when it denied
appellant=s motion to suppress.  Accordingly, we overrule appellant=s first point of
error.

B.      Ineffective
Assistance of Counsel

In his second point of error, appellant
contends both of his attorneys provided ineffective assistance during both
phases of his trial.  Specifically,
appellant argues that one member of his defense team was ineffective because
she did not object or move for mistrial when the prosecutor allegedly made
contact with appellant during her closing argument in the punishment
phase.  Appellant claims his other
attorney provided ineffective assistance when he (1) became confused about how
to voir dire a witness; (2) had difficulty understanding the proof required for
a felon in possession of a firearm; and (3) spent a portion of his closing
argument discussing personal experiences, all of which appellant speculates may
have been the result of counsel=s medical
condition.[5]
In addition, appellant alleges both attorneys were ineffective for failing to
investigate and failing to call La Tina Mimms as a witness to testify that
various firearms found at the video store belonged to her. 








Both the United States and Texas Constitutions guarantee an
accused the right to assistance of counsel. 
U.S. Const. amend. VI; Tex. Const. art. I, ' 10; Tex. Code Crim. Proc. art. 1.051 (Vernon Supp. 2004).  This right necessarily includes the right to
reasonably effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668,
686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); Ex parte Gonzales, 945
S.W.2d 830, 835 (Tex. Crim. App. 1997). 
To prove ineffective assistance of counsel, appellant must show that (1)
trial counsel=s representation fell below an
objective standard of reasonableness, based on prevailing professional norms;
and (2) there is a reasonable probability that the result of the proceeding
would have been different but for trial counsel=s deficient performance.  Strickland, 466 U.S. at 688B96. 
Moreover, appellant bears the burden of proving his claims by a preponderance
of the evidence.  Jackson v. State,
973 S.W.2d 954, 956 (Tex. Crim. App. 1998). 


In assessing appellant=s claims, we apply a strong
presumption that trial counsel was competent.  Thompson v. State, 9 S.W.3d 808, 813 (Tex.
Crim. App. 1999).  We presume counsel=s actions and decisions were
reasonably professional and were motivated by sound trial strategy.  See Jackson v. State, 877 S.W.2d 768, 771
(Tex. Crim. App. 1994).  Appellant has
the burden to rebut this presumption by presenting evidence illustrating why
trial counsel did what he or she did.  See id. 
An appellant cannot meet this burden when counsel=s actions may have been based on
tactical decisions and the record does not specifically focus on the reasons
for trial counsel=s conduct.  See Bone
v. State, 77 S.W.3d 828, 830 (Tex. Crim. App. 2002). When there is no
proper evidentiary record developed at a hearing on a motion for new trial, it
is extremely difficult to show that trial counsel=s performance was deficient.  See id. at 833.  If there is no hearing or if counsel does not
appear at the hearing, an affidavit from trial counsel becomes almost vital to
the success of an ineffective-assistance claim. 
Stults v. State, 23 S.W.3d 198, 208B09 (Tex. App.CHouston [14th Dist.] 2000, pet. ref=d). 

The trial court did not have jurisdiction
when it conducted the hearing on appellant=s motion for new
trial.  The trial court signed the
judgment convicting appellant of possession with intent to deliver a controlled
substance and possession of a firearm by a felon on August 28, 2002.  Appellant filed the motion and amended motion
for new trial on September 23, 2002.  The
trial court denied the motion by written order the following day.  The trial court then held a hearing on the
same motion on January 7, 2003, and again denied the motion.  








The procedural provisions governing
motions for new trial in criminal cases must be strictly complied with for the
trial court to have jurisdiction to consider the motion.  Oldham v. State, 977 S.W.2d 354, 361
(Tex. Crim. App. 1998).  According to
Texas Rule of Appellate Procedure 21.8, the court must rule on a motion for new
trial within 75 days after imposing or suspending sentence in open court and,
if it does not do so, the motion is overruled by operation of law.  See Tex.
R. App. P. 21.8(a), (c).  In this
case, the court overruled the motion within 75 days from when the judgment was
signed, but inexplicably held a hearing on the same motion well beyond the
applicable time period.  Even if the
trial court had not ruled on the motion, after 75 days, the trial court loses
jurisdiction and cannot rule on the motion. 
State v. Garza, 931 S.W.2d 560, 562 (Tex. Crim. App. 1996);
see also Awadelkariem v. State, 974 S.W.2d 721,728 (Tex. Crim. App.
1998) (holding that an order granting or denying a motion for new trial may be
freely rescinded so long as such action occurs within the 75 days provided by
the rules). Even the claimed deprivation of a constitutional right cannot
confer jurisdiction upon a court where none exists.  See Drew v. State, 743 S.W.2d 207, 225
(Tex. Crim. App. 1987); Hagens v. State, 979 S.W.2d 788, 791 (Tex. App.CHouston [14th Dist.] 1998, pet. ref=d).  A hearing conducted after the motion for new
trial has been overruled by operation of law is not authorized and will not be
considered on appeal.  Laidley v.
State, 966 S.W.2d 105, 107B08 (Tex. App.CHouston [1st Dist.] 1998, pet. ref=d).  Therefore, the hearing on the motion for new
trial is not properly before this court. 


Without the motion for new trial hearing,
the record is silent as to why trial counsel acted as they did.  In the face of a silent record, this court
will not speculate about why trial counsel did or did not do what appellant
alleges.  See Jackson, 877 S.W.2d
at 771.  In the absence of any evidence
to the contrary, we cannot conclude the performance of appellant=s trial counsel
was deficient.  See id.  Accordingly, we overrule appellant=s second point of
error. 

C.      Prosecutorial Misconduct

In his third point
of error, appellant contends the prosecutor assaulted him during her closing
argument in the punishment phase of trial when she (1) turned appellant=s chair around and
touched him briefly; (2) outlined his suit; and (3) touched his braided hair.[6]









To preserve error in cases of
prosecutorial misconduct, the defendant must (1) make a timely and specific
objection; (2) request an instruction that the jury disregard the matter
improperly placed before the jury; and (3) move for a mistrial.  See Tex.
R. App. P. 33.1(a);  Cockrell
v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. App. 1996).  Nothing in the record shows that appellant
objected or moved for a mistrial when the conduct in question occurred.  Because appellant failed to preserve error,
we will only review whether the trial court erred when it denied the motion for
new trial.        

It is well established that the trial
court has broad discretion to grant or deny a motion for new trial.  Lewis v. State, 911 S.W.2d 1, 7 (Tex.
Crim. App. 1995).  We review the trial
court=s ruling under an
abuse-of-discretion standard.  Id.  We do not substitute our judgment for that of
the trial court, but rather determine whether the trial court=s decision was
arbitrary or unreasonable.  Id.  In assessing the evidence presented at the
new trial hearing, the trial judge may properly consider the interest and bias
of any witness, and is not required to accept as true the testimony of the
accused or any defense witness simply because it was uncontradicted.  Reissig v. State, 929 S.W.2d 109, 113 (Tex. App.CHouston [14th Dist.] 1996, pet. ref=d).    








 The
trial court denied appellant=s motion for new
trial twice, first by written order on September 24, 2002, and then following
the out-of-time hearing on January 7, 2003. 
Appellant does not challenge the trial court=s first order, but
instead focuses his analysis on the evidence presented at the January
hearing.  As discussed under appellant=s second point of
error, the trial court lacked jurisdiction when it conducted the hearing on
appellant=s motion for new trial.  Where the court lacks jurisdiction, any
action taken on a matter is void and should be regarded as if it never
existed.  Hagens, 979 S.W.2d at
791.  Therefore, the record from the
motion for new trial hearing is not before this court on appeal.[7]  See id.  Accordingly, appellant=s third point of
error is overruled.

Having overruled all of appellant=s points of error,
we affirm the trial court=s judgment.

 

 

 

/s/      Leslie
Brock Yates

Justice

 

 

 

 

Judgment rendered
and Opinion filed February 19, 2004.

Panel consists of
Justices Yates, Edelman, and Guzman.

Publish C Tex. R. App. P. 47.2(b).

 











[1]  Although appellant=s brief states that Officer Siewert
conducted an additional patdown prior to pulling appellant=s pants back, it is unclear from
the record when and where this additional patdown occurred.  Officer
Siewert testified as follows at trial:

 

The potential C when we C when I
initially made contact with him, it was just a patdown search to ensure that he
didn=t have any weapons. 
Some weapons are very small, so I didn=t know
what he had in his C in the back of his pants.  I just wanted to check it out. 





[2]  The record
indicates that appellant filed a second motion for new trial on the same
day.  The second motion appears to be
identical to the first.





[3]  Appellant does not state
specifically which pieces of evidence the trial court erred in admitting.  Because the weapons and body armor were
obtained during the search of the video store and appellant does not contest
the validity of the warrant to search the premises, we will only address this
issue with regard to the contents of the plastic bag obtained during the search
of appellant.               

 





[4]  The warrant authorized the search
of Video 2000 and the arrest of Aany person(s), including but not limited to a B/M known
only as >Gucci=,@ which could have arguably included
appellant; however, the United States Supreme Court has noted that the Fourth
Amendment does not permit Aopen-ended@ or Ageneral@ warrants.  See Ybarra v. Illinois, 444 U.S. 85,
91, 92 n.4 (1979) (stating that search or seizure of person must be supported
by probable cause particularized with respect to that person, but declining to
consider situation where warrant authorizes search of unnamed persons in place
and is supported by probable cause to believe persons who will be there will be
in possession of drugs).  Whether this is
an open-ended or general warrant is not before us on appeal because appellant
does not contest the validity of the warrant. 






[5]  During trial,
counsel requested a brief recess because he felt his glucose dropping and
wished to eat something before continuing. 





[6]  Appellant
contends the alleged misconduct took place during the following portion of the
State=s closing argument in the punishment phase:

Now, in voir dire we also talked about and I asked the questions C actually defense counsel asked one of the panel
members, what does a drug dealer look like? 
That panel member said, slicked-back hair, nice suit, nice things.  That is Corey Morrison.  Slicked-back hair, nice suit.  He is a drug dealer.





[7]  Even if we were able to consider
the record from the hearing, we would not disturb the trial court=s ruling. The evidence was
inconsistent as to whether the prosecutor touched appellant during her closing
statement.  While appellant, his wife,
and one of appellant=s trial attorneys testified that
the prosecutor touched appellant, several other witnesses, including appellant=s other trial attorney, the
bailiff, the court reporter, and a juror, testified that they did not observe
the prosecutor touch appellant.  In
addition, the trial court had firsthand knowledge of any alleged incident
because he presided over the punishment phase.